# LIVENGOOD, by Next Friend, v. JOPLIN-GALENA CONSOLIDATED LEAD & ZINC COMPANY, Appellant.

## In Banc, January 15, 1904.

1. **Negligence:** SAFE PLACE TO WORK: QUALIFICATION OF RULE. The rule that the master must furnish the servant a reasonably safe place to work, is subject to the qualification that regard must be had to the character of the work the master is engaged in and which the servant is employed to do. Some work, like mining and the use of dynamite, is necessarily dangerous, depending somewhat, but not entirely, upon the care that is taken by the servants, as well as by the master.

2. ——: ——: MINING: FELLOW-SERVANT. Plaintiff was injured while assisting a drillman in drilling holes in a mine drift, by the explosion of a charge of giant powder in a hole which had on the day previously, before plaintiff's employment, been placed in the drift by the same drillman, but which had not then exploded, but was exploded on this day by the drill coming in contact with the powder. It was the duty of the drillman with whom plaintiff was working as a helper, to examine after every shot to ascertain whether or not all the shots had exploded, and it was a part of the duty of the helper to assist the drillman in that examination, and if it was discovered that any shot had not exploded it was their duty to work somewhere else, and this was the usual and customary way of the business. The place was otherwise a reasonably safe place in which to work, and the drill was a safe appliance, but plaintiff did not know that there was an unexploded charge in the drift, neither did the master nor foreman, or the drillman with whom he was working. *Held,* that the duty of inspecting the drift after the discharge of the shots to ascertain whether or not there was an unexploded charge of powder therein, was not a personal duty of the master which he could not delegate to the drillman, but that being a duty which could have been safely performed by the drillman or the helper, their neglect to make the examination was not the negligence of the master, but that either of a fellow-servant, or was contributory negligence, and hence plaintiff can not recover.

*Held,* by VALLIANT, J., dissenting, that the duty of the master to furnish the servant a reasonably safe place in which to work, if cast upon a servant, does not relieve the master of liability for its

negligent performance, but that negligence is the master's negligence; and the duty being cast upon the drillman to look out for unexploded shots, he as to that duty stood in his master's shoes, and his neglect to do so was not the negligence of a fellow-servant of the drillman's helper, but the negligence of the master. *Held,* also, that the only risk the servant assumes is the risk incident to the business unmixed with the master's negligence.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

REVERSED.

*McReynolds & Halliburton* for appellant.

(1) Wilkie and plaintiff were working under one common directing superior, and were fellow-servants. Parker v. Railroad, 109 Mo. 378; Ryan v. McCully, 123 Mo. 636. (2) Plaintiff and Wilkie, the drillman, were fellow-servants, and defendant is not liable for the accident caused by the negligence of Wilkie. Grattis v. Railroad, 153 Mo. 380; Hawk v. McLeod Lumber Co., 166 Mo. 121; Lee v. Detroit Bridge & Iron Works, 62 Mo. 565; Higgins v. Railroad, 104 Mo. 413. (3) (a) An employee assumes all the risks naturally incident to the business in which he is employed. So if explosions of the character that injured plaintiff are ordinary and common in the mining district in which he was employed, it becomes one of the assumed risks, and defendant's evidence to show that such explosions were common, should have been admitted. Bradley v. Railroad, 138 Mo. 302; Schaub v. Railroad, 106 Mo. 88; Lucy v. Oil Co., 129 Mo. 32; Harff v. Green, 168 Mo. 12; Alcom v. Railroad, 108 Mo. 95; Watson v. Coal Co., 52 Mo. App. 366; Gleeson v. Mfg. Co., 94 Mo. 206; Herbert v. Boot and Shoe Co., 90 Mo. App. 305. (b) It is not the law that an employee assumes only such risks as are so obviously dangerous as to threaten immediate injury. Minnier v. Railroad, 167 Mo. 99; Thompson v. Railroad, 86 Mo. App. 141. (4) In this case plaintiff

testified that he had been mining five years.   The evidence shows without controversy that it was the duty of the drillman and helper, before setting up and starting the drill, to clean out old drill holes and examine and see that there was no unexploded powder; that being true, the accident was not caused by the negligence of defendant but by the negligence of Wilkie and plaintiff, and defendant is not liable.   Ring v. Railroad, 112 Mo. 220; Schaub v. Railroad, 106 Mo. 74.   (5)   So far as shown by the evidence the mine was a safe place to work (except for the unexploded shot which it was the duty of Wilkie and plaintiff to examine for before starting the drill, and which they failed to do) ; the mine thus became dangerous  by their negligence, and not  defendant's. Gleeson v. Mfg. Co., 94 Mo. 206.   Defendant furnished its employees a reasonably safe place to work and reasonably safe appliances to work with.   If it became unsafe for the work, it was because of employees' failing to use tools furnished them in cleaning out and examining the drill holes, before commencing to drill, and defendant is not liable.    Bowen v. Railroad, 95 Mo. 277; Jones v. St. Louis Packet Co., 42 Mo. App. 406; York v. Railroad, 117 Mo. 405.   (7)   Where a master furnishes proper appliances and material to be used in its mine, it may delegate the duty of watching and keeping appliances properly used to an employee, and will not be liable for his negligence.   Ives v. Minnesota Dock Co., 82 N. Y. Supp. 193; Burnes v. Sennett, 99 Cal. 363, 33 Pac. 916; Daley v. Railroad, 147 Mass. 101; Kehoe v. Allen, 92 Mich. 464; Heffern v. Railroad, 45 Minn. 471; Ling v. Railroad, 50 Minn. 160; Jones v. Railroad, 43 Mo. App. 398; Kennard v. Cunard S. S. Co., 55 N. Y. Supr. Ct. 558; Prescott v. Ball Engine Co., 176 Pa. 459.

*Thomas & Hackney* for respondents.

The duty to provide plaintiff with a reasonably safe place to mine was a duty personal to defendant, and after the shots had been fired in the face of the drift, it was a personal duty to use reasonable precautions to ascertain that all the shots had been fired before sending the plaintiff into the face of the drift to drill other holes, and this duty could not be delegated to another so as to avoid liability in case the person to whom the duty was delegated failed to use due diligence to see that the face of the drift was reasonably safe for plaintiff to drill in. The master's duty to the servant can not be laid aside by him or put upon others in such a way as to exculpate him when an injury happens by reason of its non-performance. When a corporation is the master it necessarily must intrust this duty into the hands of servants; but these, while performing such duties, are not fellow-servants to other servants in the sense of the law. Though a corporation has been as careful and painstaking as possible in selecting servants to perform its duties, yet if they should be guilty of a negligent act or omission which hurts another servant, the corporation would be liable, for when it selects another to perform one of the personal duties which it owes to one of its servants, that other stands in its stead as *alter ego*. Henry v. Railroad, 109 Mo. 488; Schaub v. Railroad, 106 Mo. 74; Zeller v. Water & Light Co., 92 Mo. App. 107; Huth v. Dohle, 76 Mo. App. 671; Coontz v. Railroad, 121 Mo. 652; Railroad v. Herbert, 116 U. S. 642; Bowen v. Railroad, 95 Mo. 278; Murray v. Railroad, 98 Mo. 576; Porter v. Railroad, 71 Mo. 66; Covey v. Railroad, 86 Mo. 641.

In Banc.

MARSHALL, J.—The following opinion heretofore rendered in Division One is hereby adopted as the opinion of the Court in Banc. *Robinson, C. J.,* and *Burgess, Gantt* and *Brace, JJ.,* concur; *Fox, J.,* not sitting; *Valliant, J.,* dissents.

IN DIVISION ONE.

MARSHALL, J.—This is an action for thirty thousand dollars damages for personal injuries received by the plaintiff by an explosion in defendant's mine near Carterville, on May 21, 1900. The plaintiff recovered a judgment for ten thousand dollars, and the defendant appealed.

The negligence charged in the petition is that the defendant failed to furnish the plaintiff a reasonably safe place to work, and to take necessary precautions to render plaintiff's service reasonably safe, and to inform the plaintiff of any and all hidden danger, and that disregarding its duty in this regard, it "negligently directed the plaintiff and his co-workmen engaged in operating said steam drill, to drill three holes in the face of a drift in defendant's said mine, in the face of which, drill holes had been previously made by other servants and employees of the defendant and charged and loaded with dynamite and other explosive substances, for the purpose of breaking and loosening the ground in said drift, and which said shots so loaded had been previously, by other servants of defendant, attempted to be shot off and exploded, but that in fact one of said shots so previously charged in said drift had not been fired and had failed to explode, of which fact the plaintiff was ignorant at the time he went to work in said drift making said drill holes as aforesaid; and that the defendant had failed and neglected to inform plaintiff, that one of said shots so previously made had not been exploded and remained in the face of said drift; that it was the duty of the defendant, after attempting to fire said previous shots, to inspect said drift, to ascertain whether or not all of said shots so previously loaded had been shot off and discharged, and to advise plaintiff and his co-workmen of the fact, before putting them to operate said steam drill in the face of said drift, but that the de-

fendant, wholly disregarding its said duty to plaintiff, negligently failed to inspect the face of said drift, to ascertain whether or not all of the said shots so previously loaded in the face of said drift had been discharged; that the defendant, by the exercise of ordinary care and diligence in the inspection of said drift, after attempting to fire off said previously loaded shots, could have ascertained that one of said shots had not been exploded, which said inspection and examination the defendant negligently failed to make, or if he did make it, negligently and carelessly failed to notify the plaintiff that one of said shots so previously loaded had not exploded, and of the danger which plaintiff ran in attempting to operate said steam drill and to drive the three drill holes aforesaid in the face of said drift; that by reason of said negligence of the said defendant, and plaintiff believing that the said place where plaintiff was sent to work by the defendant was reasonably safe for him to operate said steam drill therein, and believing that the defendant had discharged its duty to the plaintiff and had made all necessary examinations of said drift after the previous attempted shots, while operating said drill and drilling one of said drill holes in the face of said drift, as directed by the defendant, and while exercising ordinary care, plaintiff drove a drill hole on or near to the said drill hole where the previous shot had not been discharged as aforesaid, and that by means of the said drilling by plaintiff, after the said drill hole had been driven to a depth of some two feet, the said drill came in contact with the giant powder contained in the previous charge, by means of which the said previous charge in said drill hole was exploded and the said shot fired; and that by the explosion of said shot, plaintiff was greatly injured and wounded," etc.

The answer is a general denial, a plea of contributory negligence and of assumption of risk.

To maintain the issues on his behalf, the plaintiff was called as a witness in his own behalf, and testified

that he was nineteen years old; that on Monday morn-ing, May 21, 1900, he applied to one Dixon, the ground boss of the defendant's mine, the "Gray Goose," for employment; that Dixon asked him if he had ever worked the machine or was a machine man, and he told him he had worked with a machine a little bit, and Dixon told him to go in the mine and help Wilkie, who was running a steam or compressed air drill; that he went down into the mine and found Wilkie and they "cleaned out" and set up the machine, and drilled two holes and were drilling a third when an explosion occurred, by reason of the drill coming in contact with an unexploded shot (or charge of dynamite) in a drill; that the plain-tiff was most seriously and distressingly injured and crippled and disabled for life, lost his eyesight, and his right hand and left arm were disabled, his left leg was injured, a rib was broken, and he had about a hundred small slivers of rock driven into his body.  On cross-examination, he said he had been working around mines for about four or five years, and had before worked a little—not a great deal—with drills; that he told Dixon he had worked a little bit with drills; that Dixon told him he wanted a helper or backer for the machine man; that he had been around Carterville about four days, and prior to that had worked around Joplin; that he had no prior acquaintance with this mine; that when he went down into the mine it showed that it was being worked, but he could not tell how long before; that when he got down in the mine he helped Wilkie to "level off" and clean up the machine.

The defendant asked him if he had not heard of a great many explosions caused by drilling into unex-ploded shots; the plaintiff objected to the question, the court sustained the objection and refused to allow the defendant to show that the plaintiff had so heard before he went to work in this mine.

The plaintiff then called a doctor, who testified to the character of the plaintiff's injuries, and then the

plaintiff rested. The defendant demurred to the evidence. The court overruled the demurrer, and the defendant saved an exception.

To sustain the issues on its part, the defendant called John Dixon, the foreman of the mine, who testified that he had been engaged in mining for about twenty-four years, and had had seventeen years' experience in drilling; that this mine had been in constant operation for about three months before the accident; that when the plaintiff applied to him for work, he asked him if he was acquainted with machine work, and he said he was not a professional machine man, but he had helped a little in New Mexico; that he employed him as a helper to Wilkie; that it is the duty of the drillman after shots have been fired, to examine and find out whether or not all the shots have been exploded, before drilling any more holes; that he is furnished with a "spoon" and hose with air in it to clear the "face," so he can see clearly whether there is any powder or an unexploded shot in a drill hole; that when shots have been fired, it is the duty of the machine man to make such examination the first thing the next morning before doing any other work, and if he finds that any shots have not exploded, to report that fact to the foreman, and to go to work somewhere else in the same or, if necessary, another drift; that it is not the duty of the foreman to make such examinations; that it is the duty of the helper to assist the machine man in his work; that he did not tell the plaintiff that shots had been fired on Saturday night; that he did not know that any of the shots had not exploded.

The defendant also called six other expert, practical and experienced miners, foremen, etc., who testified that it is the duty of the machine man to examine and see whether any shot has not been exploded, before doing any more drilling, and that it is the duty of the helper to assist the machine man in making such examination,

and that it is not the duty of the foreman to make such examination, nor is it customary for him to do so.

At the close of the whole case, the defendant again demurred to the evidence; the court overruled the demurrer, and the defendant excepted.

The court submitted the case to the jury upon the plaintiff's instructions which declared the law to be that after the explosion on Saturday night, it was the duty of the defendant to ascertain whether or not all the shots had exploded, before sending the plaintiff into the drift as helper to the drillman, and if the company did not do so or did not inform the plaintiff that shots had previously been put in and caution him to examine and ascertain whether they had all exploded, the defendant was guilty of negligence and the verdict should be for the plaintiff.

The court refused to instruct the jury, as asked by the defendant, that if they found that Wilkie and the plaintiff were fellow-servants and if it was Wilkie's duty to examine and see whether all the shots had been exploded before proceeding to drill further, and if the explosion was caused by Wilkie's negligence, the plaintiff could not recover.   Also refused to instruct the jury that the plaintiff by entering the service assumed the ordinary risks incident to running the drill, among which was the risk of drilling into unexploded shots and causing an explosion.   Also refused to instruct that Wilkie and the plaintiff were fellow-servants, and that the plaintiff could not recover if the accident was caused by Wilkie's failure to discharge his duty and examine and ascertain whether all the shots were exploded before proceeding with the work of drilling.

## I.

There is no room for doubt that the plaintiff and the drillman, Wilkie, were fellow-servants.   In fact, the petition so treats them, for it speaks of "the plaintiff

and his co-workmen'' [there was only one, and that was Wilkie] ''engaged in operating said steam drill.''

If they were fellow-servants, and if the injuries were caused by the negligence of Wilkie, the plaintiff is not entitled to recover. This is axiomatic in the law, and is not controverted by the plaintiff.

The plaintiff's theory, which was adopted by the circuit court, however, is that it was the master's duty to furnish the plaintiff a reasonably safe place to work, and that this duty is personal, and that the defendant in this case, instead of discharging this duty in person by examining and ascertaining whether or not all the shots had been exploded on Saturday night, unlawfully employed Wilkie to discharge this part of its personal duty, and, hence, the defendant is liable without regard to whether Wilkie was a fellow-servant or not, and without regard to whether he was negligent or not.

The first postulate is correct. It is the duty of the master to furnish the servant with a reasonably safe place to work, but this is subject to the qualification that regard must be had to the character of the work the master is engaged in, and which the servant is employed to do, for some work, like mining and the use of dynamite, is necessarily dangerous, depending somewhat, but not entirely, upon the care that is taken by the servants, as well as by the master, in the doing of the work and in the handling of the dangerous explosives. [Grattis v. Railroad, 153 Mo. 380; Minnier v. Railroad, 167 Mo. 99.]

But the plaintiff is not correct in his application of this principle of law to the facts in this case. The defendant did furnish the plaintiff a reasonably safe place in which to work, and did furnish reasonably safe tools and appliances with which to do the work, regard being had to the character of the work to be done.

The business was necessarily attended with some risk and danger, but it could be done in a comparatively safe manner, or it could be done in a negligent manner.

The injury resulted, in this case, not from a failure of the master to discharge his personal duty to furnish the servant with a reasonably safe place and reasonably safe tools and appliances with which to do the work, but from the manner in which the work was done.

The petition charges that it was the duty of the master to examine, after each shot, to see whether all the shots had exploded, and the plaintiff's instructions proceed on the same theory, and counsel for plaintiff in their brief contend that the defendant, instead of discharging this duty in person, hired Wilkie to do it, and that this was beyond the power of the defendant, and, hence, the defendant was negligent and is liable. The petition also charges that the previous shots, on Saturday, had been fired by "other servants" of the defendant, but this is not shown to be the fact. On the contrary, those shots were fired by Wilkie.

There is no conflict in the testimony that it was a part of the duty of the drillman, Wilkie, to examine and ascertain after every shot whether all the shots had exploded, and it was a part of the duty of the helper, the plaintiff, to assist the drillman in this work, and if it was discovered that any shot had not exploded, it was the duty of the drillman and his helper to go to work somewhere else in the same or, if necessary, in another drift. The testimony is uncontradicted that this is the usual and customary way of doing such business, and that the duty of inspecting for unexploded shots is usually cast upon the drillman and his helper, and not upon the foreman or master.

Unless, therefore, it be the law that such duty of inspection is a personal duty of the master which he can not delegate to or cast upon any one else, the defendant can not be adjudged guilty of negligence in this case.

The duties of a drillman and his helper are necessarily more or less dangerous, but they are simple, and require no great amount of skill or training. Any man of ordinary intelligence can perform them. They con-

sist of drilling holes in the rock, putting sticks of dynamite in them, setting off the shots, removing the dirt after the explosion, and then going through the same operation again. It is not a scientific matter to ascertain whether any of the charges in any of the holes remain unexploded after the shots have been fired. Even the slightest examination will disclose that fact to even the most unscientific investigator. There is no reason in law why the ascertainment of this simple fact can not be as well and as safely performed by the servant, as the drilling of the hole and the charging of it with dynamite can be performed by the servant. In fact, the latter requires more care and skill than the former. And there is no claim in this case that the master was negligent in the selection of the drillman, nor that Wilkie was an unsuitable or improper person to be employed in such work. That he was negligent in this case is apparent, but he also paid the penalty himself by losing his eyesight.

It can not, therefore, be said as a matter of law that the master was negligent in not performing the duty of inspection personally, nor that he was not entitled to have the duty performed by the servant. It was a natural and almost inseparable part of the very work the servant was employed to do. In the very nature of the business, it would be practically impossible for the master, who was largely engaged in mining, to visit every drift after every shot to see if every charge had been exploded.

The fundamental idea upon which the case was predicated and submitted to the jury was therefore erroneous.

The contention of the plaintiff that the master was negligent in not informing the plaintiff that there had been shots fired on Saturday and in not warning the plaintiff to examine and look out for unexploded charges, is also untenable. The plaintiff applied for work; represented that he had been engaged in mining

for four or five years, and while not a professional drill-man, yet had had a little experience running a drill; he saw, when he went down into the mine, that it was a going concern, and was being worked; he saw that shots had been fired; he found Wilkie "cleaning up" or "leveling off," and fixing the drill for further work, and he set about assisting him in so doing as a part of his duty, and he had, therefore, the physical evidences of the fact that this mine was being operated like such mines usually are. The master did not know that any shot had been exploded, and, therefore, was not negligent in not giving the plaintiff warning of a fact which was known to him and was unknown to the plaintiff, and in which respect this case differs essentially from the case of Chambers v. Chester, 172 Mo. 461.

This case is also wholly unlike Fisher v. Central Lead Co., 156 Mo. 479, and Hamman v. Central Coal & Coke Co., 156 Mo. 232, where the master failed to furnish the servant a safe place in which to work, in that, he failed to provide suitable props for the roof of the mine, or to make provision to protect the servant against rocks falling from the roof of the mine, while the servant was at work in a drift, and where it was no part of the duty of the servant to make such provision against such injuries.

Here it was the duty of the drillman and of the plaintiff to examine and see whether any charge remained unexploded. They failed to do so, but proceeded with the work and the injury ensued. The drillman was negligent and the plaintiff was negligent. The injury was caused by a risk incident to and ordinarily connected with the doing of the work the plaintiff engaged upon. The negligent manner in which the plaintiff and his fellow-servant, Wilkie, did the work, caused the injury. The work of the master was dangerous, but it was not illegal. The master had a right to con-

duct it in his own way so long as that way was not illegal and so long as it was not negligently done on his part. The servant assumed the risk of doing the work in that way when he entered the master's employment. He also assumed the risk of being injured if his fellow-servants were negligent, and they, in turn, assumed the risk of being injured if he was negligent. For such injuries there can be no recovery.

The injuries to the plaintiff are the most distressing and serious of any that have ever been present in any case that has been called to the attention of this court, and the record has been scrutinized with the hope that some legal ground could be found which would warrant an affirmance of the judgment, but while the sympathies of this court are with the plaintiff, the law is so plainly against him that the court is reluctantly forced to reverse the judgment of the trial court.

All concur, except *Valliant, J.*, who dissents.

### DISSENTING OPINION.

VALLIANT, J.—The opinion of the court in this case is based on the assumption that Wilkie, whom the defendant's testimony tends to show was entrusted with the performance of the master's duty in respect of examining for unexploded shots, was the fellow-servant of the plaintiff.

In my judgment that is an erroneous assumption and for that reason I dissent from the opinion based on it.

The master owes the duty to his servant to furnish him reasonably safe implements with which to work and a reasonably safe field of operation. This duty the master can not shirk by casting it on a servant. It is not necessary that the duty be performed by the master in person, he may cast it on a servant to perform, but when he does so he is not rid of it. The act of the servant in performing or neglecting to perform that duty is the

act of the master and he is as liable for the act as if he performed it in person.

The ordinary employment of a servant is to do the work of his master in respect of the business in which he is engaged; in this case it was to get out the ore for market. That is what the plaintiff was employed to do, and according to his testimony it was the only thing he was employed to do. That is, also, according to the testimony of both plaintiff and defendant, what Wilkie was employed to do. But in addition to that work, according to defendant's testimony Wilkie was also charged with the duty of looking out for the unexploded shots. If Wilkie had that duty, then he was employed in a dual capacity; in one he was a servant doing the ordinary work for which the business was being conducted; in the other, he was in the master's shoes looking after the safety of his servants. In the one capacity he might be the fellow-servant of the other servants doing the ordinary work of the mine, but in the other capacity not so; if he was guilty of negligence, in the one capacity it might in a given case be adjudged the negligence of a fellow-servant, whilst his negligence in the other capacity would be the negligence of the master. The master can no more avoid his duty by selecting one to perform it who is also engaged in the ordinary work and who in that respect is a fellow-servant of others engaged in the same work, than he can by selecting a man to do that duty and nothing else.

The master may entrust the performance of his duty to look after the safety of his servants to one or many, and if too many, then they, in the performance of that duty, might become as to one another fellow-servants. But because men are fellow-servants when working in one capacity, that does not make them fellow-servants with reference to their work in another capacity.

In considering this subject we should keep in mind

that this duty the master owes to his servant is never ended, and he can not by any form of his contract make his servants assume the risk of his negligence. The only risk the servant assumes, and the only risk he can lawfully be made to assume, is the risk incident to the business unmixed with the master's negligence.

In this case, according to the plaintiff's testimony, the only work he was employed to perform was that of helping Wilkie run the drilling machine to get out the ore; he was employed to do the work of a common laborer in that capacity; he was not in any sense the master's *alter ego*. The story he told the superintendent when he applied for employment showed that he was a boy of very little experience, certainly not enough to be entrusted to look after the safety of himself and others working with him in the dangerous occupation. In his employment there was nothing said to him to indicate that he was to be the master's vice-principal. Unless he was the master's vice-principal in this respect, and unless Wilkie was also the master's vice-principal in the same respect, they were not fellow-servants.

There was testimony on the part of defendant which was at least intended to show that this boy was employed to look after these unexploded shots, and to assist in the performance of the duty which the master in that respect owed to him and the other servants. But that was contrary to the plaintiff's testimony and it raised a question for the jury. This court has no right to pass on that question of fact; it was passed on by the jury and that should be the end of it.

In my opinion the judgment should be affirmed.