BENNETT, Respondent, v. HIMMELBERGER-HAR-
RISON LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, February 27, 1906.

1. **PERSONAL INJURIES: Release: Failure to Read.** Where one
is injured by the negligence of another and afterwards exe-
cutes a release of his claim for damages on account of such
injury, he can not be heard to complain that he did not un-
derstand its contents because he didn't read it; he is bound
by it whether he read it or not, unless it was obtained by
fraud or without consideration.

2. ————: ————: **Consideration.** Where, in an action for such
injuries the evidence for the plaintiff tended to show that he
received as gratuitous pay, during the time he was disabled
from the injury, the sum claimed by defendant to have been
paid as consideration for the release, the question of whether
or not there was a consideration was for the jury.

3. **MASTER AND SERVANT: Safe Appliances: Reasonable Care.**
The master is not the insurer of the safety of the appliances
with which his servant is put to work, but he is required to
exercise ordinary care to provide safe tools; the master is not
liable for injuries caused by a defect in the tool, unless the
defect was known to him or could have been known by the
exercise of reasonable care.

Appeal from New Madrid Circuit Court.—*Hon. Henry
C. Riley,* Judge.

REVERSED AND REMANDED.

*Oliver & Oliver* for appellant.

(1) By the uncontradicted testimony of all the
witnesses, the appellant furnished the respondent with
new, approved and perfect climbing spurs — such as are
used by all climbers—and that the "graft" or "spike"
on these climbing spurs were changed by request and
direction of appellant who had used them and who alone

was to use them. Where this is so the master is not liable. 4 Thompson on Neg. (2 Ed.), 635, section 4616, and cases cited; also sec. 4654 on page 683 and cases cited; also sec. 4659, p. 674. (2) There was no evidence whatever authorizing the court to submit to the jury the question tendered by the replication. The plaintiff admitted that he could read; that he had an opportunity to read the release; that he did not do so; that he still retained the money paid for that release and that the money was paid for services performed while he was unable to perform service. Where this state of facts is shown by the plaintiff it is the duty of the trial court to give a peremptory instruction, and it is reversible error to submit such an issue to the jury. Mateer v. Railroad, 105 Mo. 353, 16 S. W. 839; Mathias v. Kansas City Stock Yards Co., 185 Mo. 459, 84 S. W. 66. (3) Respondent's first and second instructions are erroneous and have been condemned repeatedly by the appellate courts of this State. These instructions impose an absolute liability on the defendant and direct a finding against it whether the defendant knew, or by the exercise of ordinary care could have known of the alleged defects in the spur. In other words these instructions directed the jury to find a verdict against the defendant whether the defendant knew, or by the exercise of ordinary care could have known, of the alleged defect. "This was error. If the defendant did not know of the defect and in exercise of reasonable care and precaution on its part would not have disclosed it, no liability attached for the accident." Hester v. Dold Packing Co., 84 Mo. App. 454; Elliott v. Railroad, 67 Mo. 274; Covey v. Railroad, 86 Mo. 641; Pavey v. Railroad, 85 Mo. App. 221-2; Porter v. Railroad, 71 Mo. 79; Brenn v. Cooperage Co., 50 Mo. App. 202; Howard v. Railroad, 173 Mo. 531, 73 S. W. 467. (4) Instruction No. 3 given for the respondent is vicious. It directs the jury to find for the plaintiff notwithstanding he read and signed the release, set up by defendant in bar of this action, if they further believe that

the defendant "was kept on the pay roll for June, July and August and until September 10th as a gratuity, then in such case the release pleaded is no defense to plaintiff's action." It is not the province of the court to select certain facts, shown by the evidence, and tell the jury how much, and what weight they shall give to such facts, or whether they shall give such evidence any weight at all Copp v. Hardy, 32 Mo. 593; State v. Smith, 53 Mo. 271; Jones v. Jones, 57 Mo. 142-3; State v. Rutherford, 152 Mo. 133, 53 S. W. 417.

*H. C. O'Bryan* and *B. F. Kelly* for respondent.

STATEMENT.—Defendant is a corporation and the owner of a large sawmill and manufacturing plant at Morehouse, New Madrid county, Missouri. It owns a large body of timber land in the same county, from which the mill is supplied with saw stock. The saw timber is brought to the mill by rail. To expedite the work of hauling the sawlogs from the woods to the railroad, called a tramway, defendant purchased and put in use what is known as a skidder machine. This machine consists of a boiler and engine which, when in use, is mounted on a flat car. When it is desired to operate the machine, a convenient and strong tree is selected and the railroad track is laid from the main road to the tree and the car on which is mounted the skidder machine, is backed up against the tree. The tree is equipped with blocks, tackles and pulleys and is supported by guy ropes; in the evidence it is called a "gin pole or mast." Through the pulleys, wire ropes are worked by the skidder for the purpose of pulling logs from the woods to the loading place. To operate the skidder requires a crew of seven men. On May 25, 1903, plaintiff was one of the crew operating the skidder and his duties were to run the skidder engine and climb the tree selected as a mast and attach, while up in it, the necessary blocks, tackles and pulleys for the wire ropes to pass through and to make

secure the guy ropes to the tree. Along with the skidder machine, there was furnished a pair of climbing spurs consisting of a piece of flat steel made to fit the inside of the leg below the knee, with a stirrup to extend under the instep of the climber's foot and near the lower end of the spur is a projecting piece of steel projecting downward and inward, called a gaft or spike. The spur climber is fastened to the leg of the climber by straps, his foot resting in the stirrup. In climbing, the climber drives the gaft into the tree or pole he is ascending to a sufficient depth to sustain his weight. His upright position as he climbs is usually maintained by the leather straps and ring about his body. On May 25, 1903, plaintiff, in pursuance to his duty, put on the climbing spurs and proceeded to ascend a large tree which had been selected as a mast. He ascended the tree about sixty feet when the spur on his left foot, according to his evidence, broke, and being unable to save himself, he fell to the ground and alighted between the rails of the railroad track. The fall caused injury to his left foot and to both of his hips. The suit is to recover for these injuries.

The petition charges in substance that the defendant and its master mechanic failed and neglected to furnish the plaintiff with reasonably safe climbing spurs.

The answer denied the defendant failed to furnish the plaintiff with reasonably safe climbing spurs and alleges that the spurs furnished were strong, sound and of the most approved design and such as were in universal use. For affirmative defenses, the answer alleged in substance that the plaintiff's fall from the tree was caused by his own want of care and that his own carelessness contributed to his fall; that the climbing spurs used by plaintiff were furnished at the special instance and request of the plaintiff and were changed to suit him by his special direction, and the gafts made longer at his request, and if they were thereby made weak, they were made so by the direction and order of the plaintiff; that plaintiff represented himself as an expert climber to de-

fendant's foreman and made application for the position of climber for an increase in his wages and knew that the climbing was attended with risk and assumed that risk. And further alleged that the plaintiff, while climbing the tree, became frightened and refused to use the spurs, lost his poise and fell; that on the 11th day of September, 1903, plaintiff and defendant made a settlement between themselves for the injuries complained of and that the plaintiff, in consideration of $188 paid him, executed and delivered to the defendant a release of all claims for the damages claimed in the petition and for which the suit was brought.

The replication denied the new matter pleaded in the answer, and in respect to the release, alleged that after the plaintiff was injured, the defendant, without any consideration or agreement, continued to carry him on its pay roll and paid him on July 10th, $50, on August 10th, $52, and on September 10th, $54, which payments he supposed were gratuitous; that on the 11th of September, 1903, one Sol Alexander, superintendent for defendant and vice-principal came to plaintiff and represented to plaintiff that the company wanted him to sign the paper filed, telling him that its contents were a release from high wages while he was not working as they had formerly been paying, that plaintiff would find the paper in the office, which representation was the sole inducement for plaintiff to sign the same, and which representations were relied upon as true by plaintiff, and believing and acting thereon he signed the same without knowledge of its contents or purport; which said representations were false and fraudulent and by the use of said fraud and false and fraudulent representations, plaintiff signed said paper in ignorance of its true purport and in the belief that it only released defendant from continuing plaintiff on the pay roll during his illness.

The evidence shows that plaintiff had used the spurs on a previous occasion in climbing a tree and rigged it

as a mast for the operation of the skidder, and found, as he testified, that the gafts were too short to go through the bark and take hold in the wood and that the stirrup was too broad or open for his foot, and he testified that he told the boss of the skidder crew (Sam Riley) of the defects and that Riley said he would have the stirrups turned in and the gafts made longer. The gafts were attached and held in place by rivets. After plaintiff made complaint of the spurs, they were taken to defendant's blacksmith shop and the blacksmith was given directions to make the necessary alterations as recommended by plaintiff. The blacksmith (Ed Holder) drew in the stirrup so that it fitted plaintiff's instep, detached the gafts and drew them out about one-half an inch, made them sharper at the points and re-riveted them to the climber. Plaintiff testified he did not examine the spurs after the alterations were made and denied that he directed how the alternations should be made or that they should be altered at all; that he only complained that the gafts were too short and the stirrup was too wide. Riley, the boss, and Alexander, the superintendent, testified that after plaintiff climbed the first tree, he said the climbers were not in the right shape; that the gafts were not long enough and would not stick and that the stirrup was too broad; that the gafts ought to be made sharper and longer; that he was told he could have them changed to suit himself and that the changes were made at his request and as he directed; that after the changes were made, and the climbers were returned from the shop, plaintiff examined them and said they were all right. Holder, the blacksmith, testified that he had made the alterations in the climbers as directed and that the spurs were securely riveted on after they had been drawn out and that the weight of a man, even if he weighed three hundred pounds, was not sufficient to break the gaft loose; that it would require a severe blow to break them off. (Plaintiff weighed one hundred and sixty pounds.) To keep his body erect and steady while climbing the tree,

plaintiff used a withe which he passed around the tree and held onto with both hands. He testified that after he had climbed about sixty feet up the tree, the gaft of the left spur broke off, causing him to slip down the tree; that he tried to stop himself by grasping the tree with his knees and holding on to the withe with both hands but that his hands gave out and he lost his grip on the withe and his descent was accelerated until he struck the ground; that he fell in between the rails of the railroad track and his evidence tends to show that bones in the instep of his left foot were broken, also some bones in his left heel, and that both hip joints were jammed and badly injured; that he suffered intense pain for eight or nine weeks while confined to his bed and that his left hip and foot continued to give him pain; that since the injury and up to the time of the trial, he was unable to do ordinary manual labor on account of his injuries; that he was twenty-six years of age and before his injury was a strong, robust man, weighing about one hundred and sixty pounds; that he had had experience in climbing with climbing spurs before he was employed by the defendant; that at the time of his injury, he was earning two dollars per day.

Defendant's evidence is that in climbing, plaintiff would use his knees instead of the spurs, and that he was repeatedly warned by Riley, the boss, while climbing the tree from which he fell, not to use his knees, but to keep them away from the tree and use the spurs; that after climbing up the tree about sixty feet, he came to a slight bend in the tree and halted and hugged the tree with his knees; that he seemed to be frightened and commenced to slide down the tree, and after sliding down eight or ten feet, let go of the withe and came on down rapidly; that the gaft of the spur on plaintiff's left foot was found where he fell right at the foot of the tree.

The release pleaded in the evidence read as follows:

"Morehouse, Mo., Sept. 11, 1903.

"In consideration of $188 (one hundred and eighty-eight dollars) to me in hand paid by the Himmelberger-Harrison Lumber Company, the receipt of which is hereby acknowledged, I hereby release and discharge the said Himmelberger-Harrison Lumber Company from any claim I have or may have against said company arising out of, or that may arise out of, an accident to me on May 25, 1903, received in attempting to fix the guy rope for the steam skidder, while in their employ.

"The contents of the foregoing release and discharge have been made known to me and I am fully satisfied therewith.

(Signed)                                    "E. L. BENNETT.

"L. H. Pope, Witness."

Plaintiff testified that he had gone to school and could read writing; that he signed the release in the presence of L. H. Pope, paymaster and cashier of defendant; that the release was not read to him and that he signed it without reading it himself; that Sol Alexander, defendant's superintendent, told him a day or two before he signed the release, that the company did not want to pay him "those high wages while he was unable to work and wanted him to sign a paper to that effect;" that he had confidence in Alexander and signed the paper without reading it; that he did not know whether he got his last check the morning he signed the paper or the morning before.

Alexander testified that a few days before September 11th, he met Bennett at the Gulf railroad depot at Morehouse and told him the next time the company paid him any money he would be expected to sign a release, that they had carried him on the pay roll since his first misfortune and paid his doctor bill but he was not sure he said he would. He told him he would find the necessary papers at the office when he got his next pay.

L. H. Pope testified that he was paymaster and cash-

ier of defendant; that "Mr. Bennett came in the office and I gave him the release; I held it and read it, and he afterwards took the release and looked it over himself, and signed the release himself after reading it. He did not read it to me but read it to himself I suppose, and then signed the release. . . . We talked a moment or so and he seemed to think that the company had treated him very nicely and seemed to be very well satisfied at the time;" and made no objection whatever to signing the release; that he held the check for $54 until plaintiff signed the release and then he handed it to him; that plaintiff's name was kept on the pay roll by order of the secretary of the company until the release was signed.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant moved the court to instruct the jury that under the law and the evidence, plaintiff could not recover. The court refused this instruction, and for the plaintiff gave the following instructions:

"1. The court instructs you that the law devolves the duty on the defendant to furnish its employees implements necessary to be used in the discharge of their duties as employees, and that such implements should be reasonably safe and suited for that purpose, and a failure to furnish them reasonably safe implements, or to furnish them unsafe implements, would be such an act as will constitute negligence on defendant's part. If in this case you believe and find from the evidence defendants furnished climbing spurs to plaintiff that were faulty and not reasonably safe; and that while climbing a tree in the discharge of his duty plaintiff exercised care and caution, and had no knowledge of the defect in said spur; and if you further believe and find from the evidence that said spur was defective and broke while plaintiff was climbing with same, and that he fell from the tree to the ground by reason of said spur breaking and was hurt, as described in the petition, then your

verdict must be for the plaintiff for such sum as you may find from the evidence is fair and just to compensate for his injuries, unless you believe he has executed a contract relieving the same.

"2. The court instructs you that while under the law the plaintiff assumes all the risk and dangers usually incident to his employment, yet he does not assume the risk and dangers growing out of the employer's negligence, and in this case if you find and believe from the evidence that the spurs for climbing furnished by defendant or its superintendent were unsafe, and that in using said climbing spurs in climbing a tree plaintiff was hurt while in the discharge of duty and while exercising care by reason of said unsafe spurs breaking, then your verdict should be for plaintiff, unless you believe he has settled and compromised his claim as defined in instruction.

"3. On the question of a compromise, release or settlement pleaded by defendant in this case the court instructs you that if you believe and find from the evidence that said paper when signed by plaintiff had not been read by plaintiff or by Pope in his presence, that plaintiff did not know what its contents were, that Alexander had told him the purport of the paper in the office which he desired him to sign was to release the company from keeping him on the company pay roll while he was not at work, and that he relied upon said representation and signed it believing that was its purport; and if you further believe from the evidence that plaintiff was kept on the pay roll for June, July and August and till September 10, 1903, as a gratuity, then in such case the release pleaded is no defense to plaintiff's action."

Nine of the jurors signed and returned a verdict for plaintiff for $2,500. A timely motion for rehearing was filed and overruled, whereupon defendant appealed.

BLAND, P. J. (after stating the facts).—1. Aside from the release, we think plaintiff was entitled to have his case submitted to the jury. In respect to the release, he was bound by it, whether he read it or not. He could read, and his duty was to read it before signing it and he ought not now to be heard to say he did not read it when he had every opportunity to do so. In the language of GANTT, Judge, in Mateer v. Railway, 105 Mo. 1. c. 352, 16 S. W. 839; "To permit such a ruling, would unsettle the business affairs of the country." In Porter v. Woods, 138 Mo., the defendant sought to avoid an assumption clause in an instrument which he had accepted on the ground that he did not read the instrument. The court, at page 548, said: "If he did not read it and inform himself of the contents, it was his own fault and he should be held as if he had done so," citing Glenn v. Statler, 42 Ia. 107; Snider v. Express Co., 63 Mo. 376; Och v. Railway, 130 Mo. 27, 31 S. W. 962, and Mateer v. Railway, supra. [See also Frost Mfg. Co. v. Springfield Fdry. Mfg. Co., 79 Mo. App. 1. c. 655; Girard v. St. Louis Car Wheel Co., 46 Mo. App. 79.] In the latter case, the court held that, "A release of a cause of action stands upon the footing of a compromise and should be upheld if fairly made. It should not be vacated for fraud in an action at law unless the evidence of the fraud, if believed, and the circumstances attending its execution, are such as would warrant a chancellor in setting it aside." Under our present statute, the sufficiency of the evidence to establish fraud is a question for the jury. The evidence of fraud, if there is any substantial evidence of it, is exceedingly slight.

But the plaintiff contends that the release was signed without consideration. His contention is supported by the evidence to the effect that the plaintiff was carried upon defendant's pay roll for three months for which he was paid as a matter of grace; that the money was given to him as a gratuity and not for the purpose of procuring his signature to the release. He received

$54 at the time he signed the release. It was therefore a question of fact to be determined by the jury whether or not there was any consideration moving from the defendant to the plaintiff for the execution of the release and we conclude that the court did right in refusing the compulsory nonsuit.

2. Plaintiff's first instruction told the jury in effect that if they found the defendant failed to furnish plaintiff reasonably safe implements or furnished him unsafe implements with which to climb the tree, such act or acts constituted negligence. Assuming for the sake of the argument that the climbing spurs were defective, suppose defendant used prudence in its purchase of the spurs and afterwards its blacksmith skillfully and cautiously reconstructed a portion of them and the defect was not known to defendant's officers or agents and they could not have detected the defect by the exercise of ordinary care, would the defendant, nevertheless, be guilty of negligence? We think not. If so, then the master is an insurer of the safety of every tool, machine or appliance with which he requires the servant to work. The rule of law, as we understand it, is that the master is bound to exercise ordinary care, which means care commensurate with the risk of the work to be done or the use of the tool to be used, to furnish his servant with reasonably safe tools with which to work, and when he has exercised reasonable care and precaution to furnish a reasonably safe tool and, nevertheless, it turns out the tool was unsafe, he is not liable, unless the defect which made the tool unsafe was known to him or could have been known to him had he exercised reasonable care and caution in the selection of the tool, or to inspect it after it had been purchased. [Porter v. Railway, 71 Mo. l. c. 79; Bowen v. Railway, 95 Mo. 268, 8 S. W. 230; Breen v. Cooperage Co., 50 Mo. App. 202; Hester v. Dold Pack. Co., 84 Mo. App. 451.]

The master is not required to furnish absolutely safe appliances. His duty is to use ordinary care and

foresight in procuring appliances and in keeping them in good order. [Tabler v. Railway, 93 Mo. 79, 5 S. W. 810; Bowen v. Railway, 95 Mo. 268; Browning v. Ry. Co., 124 Mo. 55, 27 S. W. 644; Livengood v. Joplin L. & Z. Co., 179 Mo. 229, 77 S. W. 1077; Henry v. Railway, 109 Mo. 488, 19 S. W. 239; Palmer v. Kinloch Tel. Co., 91 Mo. App. 106; Stumbo v. Duluth Zinc Co., 100 Mo. App. 635, 75 S. W. 185; Glasscock v. Dry Goods Co., 106 Mo. App. 657, 80 S. W. 364.]

The instruction made it the absolute duty of the defendant to furnish plaintiff safe climbing spurs and for this reason it was erroneous.

3. The same error occurs in plaintiff's instruction number two. As stated above, plaintiff is absolutely bound by the release unless it was given without any consideration. Whether it was given without consideration, we think, under the evidence, is a question for the jury.

For the errors herein noted, the judgment is reversed and the cause remanded. *Goode,* and *Nortoni,* *JJ.,* concur.