TROY KELLERMAN, Respondent, v. KANSAS
CITY LONG DISTANCE TELEPHONE CO.,
Appellant.

### Kansas City Court of Appeals, May 24, 1915.

1. **NEGLIGENCE: Duty to Furnish Safe Appliances: Selection by Servant.** An expert splicer of telephone cables who worked in his own way and without direction or control was told by the manager that he would get him anything he needed, and, at the splicer's request, did get new lumber for a platform for the splicer's use and told him he would get ropes therefor later. He told the workman he had some rope which he preferred to be used if it was good enough, but that if it wasn't he would get new rope. When the time came to use the rope, the splicer was sent to examine the rope on hand. He was not satisfied with it and thought it dangerous and likely to break. He used it without notifying the manager or anyone in authority that the rope was unsuitable, and the rope broke. *Held,* that it was not negligence to delegate to this skilful servant the duty of investigating and passing upon the fitness of the rope in question since it was a simple matter directly connected with the servant's work, and that no negligence on the part of the master was shown.

2. ——: ——: ——: **Contributory Negligence.** Under the foregoing circumstances, it further appearing that at the time the rope broke plaintiff allowed another man to get on the platform with him when it was unusual for two men to be on one platform, and when he knew the rope was unsafe even with one man on the platform, and that there was another platform, unused, in good order, and within easy reach, being only a few feet distant, the servant was guilty of negligence barring his recovery as matter of law.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss,* Judge.

REVERSED.

*Martin E. Lawson* and *Hogsett & Boyle* for appellant.

(1) Plaintiff is not entitled to recover. Knorpp v. Wagner, 195 Mo. 663; Forbes v. Dunnavant, 198 Mo.

193; Livengood v. Lead & Zinc Co., 179 Mo. 229; Hulse v. Telephone Co., 164 Mo. App. 126; Roberts v. Telephone Co., 166 Mo. 370; Lee v. K. C. Gas Co., 91 Mo. App. 612; Isaacson v. Wisconsin Telephone Co., 119 N. W. 804. (2) Plaintiff was guilty of negligence as a matter of law. Hulse v. Telephone Co., 164 Mo. App. 126; Myers v. Glass Co., 129 Mo. App. 556; Christy v. Railroad, 131 Mo. App. 266; Glasscock v. Dry Goods Co., 106 Mo. App. 657. (3) The court erred in giving plaintiff's instruction number one. Bradley v. Railroad, 138 Mo. 293; Bennett v. Lime Co., 146 Mo. App. 565; Minnier v. Railroad, 167 Mo. 112; Wilson v. Railroad, 169 Mo. App. 422. (4) The court erred in refusing to give defendant's instructions B, D, E and F. Coin v. Lounge Co., 222 Mo. 512-13; Halloran v. Iron & Foundry Co., 133 Mo. 471; Epperson v. Tel. Co., 155 Mo. 346; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Shimp v. Stove Co., 173 Mo. App. 423.

*Simrall & Simrall* and *Hamilton & Herndon* for respondent.

(1) Where the facts bearing on the issue of contributory negligence are disputed, or where they are undisputed but admit of different constructions and inferences, the issue must be left to the jury. Eckhard v. St. Louis Transit Co., 191 Mo. 593. (2) Negligence is not a fact susceptible of direct proof, but it is an inference deducible from the evidence and its existence may be an issue, though the facts on which it is based are not in dispute. Morgan v. Mining Co., 141 S. W. 735. (3) The mere fact that the plaintiff knew of the defective condition of the car is not sufficient to bar recovery. The danger must be glaring and threaten immediate injury, or such that a person of ordinary prudence would not have used the same. Clippard v. Transit Co., 202 Mo. 432; Cole v. Transfer Co., 183 Mo. 81. (4) Under the evidence this question was

one that should have been submitted to the jury. Morgan v. Mining Co., 141 S. W. 741; Huhn v. Railroad, 92 Mo. 440; Soeder v. Railroad, 100 Mo. 673; Hamilton v. Rich Hill Mining Co., 108 Mo. 364; Dakan v. Chase Merc. Co., 197 Mo. 238; Weston v. Mining Co., 105 Mo. App. 702; Denker v. Milling Co., 135 Mo. App. 340.

TRIMBLE, J.—Plaintiff, an expert splicer of long distance telephone cables, was at work with another splicer on a platform suspended from the steel leader by ropes, when one of them broke allowing the platform to tip and the plaintiff to slip off and fall to the ground. He brought this suit to recover damages for his injuries; and upon obtaining judgment, defendant appealed.

Plaintiff was sent, in company with his associate splicer, from Kansas City to repair a place in the lead telephone cables that had been burned out by a fire in Excelsior Springs. They took their small tools with them, but the larger and heavier tools and appliances were to be supplied by the defendant's local manager after they got there. The two experts were to learn what work was to be done and do it in their own way.

Upon their arrival at Excelsior Springs, they were shown the place where the cables had been destroyed and which were the busiest or most used cables, it being customary to repair them first.

Plaintiff asked McCracken, the local manager at Excelsior Springs, about the platforms and ropes. McCracken told him there were two platforms at the job. Plaintiff looked at them and found that one of them was defective and refused to use it, and asked McCracken for lumber with which to make a new one. McCracken showed him some lumber at the telephone office but plaintiff declined to use it, so McCracken, without objection, ordered new lumber for a platform and it was constructed. McCracken told plaintiff he

would provide the ropes later, that he had rope and didn't want to go to the expense of buying new if he could use rope he had. Plaintiff told him that was all right if the rope he had was good.

Plaintiff and his associate splicer then began their work of mending the cables on the ground "tagging out" those that were down. During the day, McCracken came by there several times and plaintiff says he asked about getting ropes for the platform and that McCracken said he would see to it, and later said Foster, the wire chief, would attend to getting the ropes. When plaintiff's work had progressed to the point where he would use the platform, he spoke to Foster about ropes. Foster said he didn't know anything about new ropes but sent a young man with plaintiff to the basement to look over the old ropes they had there. Plaintiff looked them over and picked out the only piece that was long enough. He did not like the rope, thought it was not safe and asked the boy where McCracken was. He, however, made no complaint to the boy nor did he put forth any effort to communicate with McCracken by calling him up over the 'phone or otherwise. He went back to the scene of his work which was near the local office, and it seems that plaintiff was in the office but the office force had gone home it being near the close of the day. He made no other effort to see McCracken or Foster although he says the reason he asked the boy where McCracken was, was because he wanted a new rope.

Plaintiff rigged the platform with the rope he had obtained in the basement and fastened the platform to its place in the air slightly under the suspended cables which were to be repaired. He worked thereon for several hours and came down for lunch and then the platform was hauled up again and the two men got on it to work. After being up there about half an hour, the rope broke and caused plaintiff to fall.

In considering the question whether plaintiff is entitled to recover, we must, of course, consider it solely from plaintiff's side since the verdict is in his favor, and plaintiff must be given the benefit of every inference the testimony will bear. Therefore, in speaking hereafter of what the evidence shows, it is understood that we mean plaintiff's evidence.

Plaintiff was an expert cable splicer of ten years' experience which made him thoroughly familiar with work on the platforms and the dangers connected therewith, their construction, the character and the proper arrangement of the ropes and appliances connected therewith. He was doing his work in his own way and not under the directions of anyone. The local manager of the telephone exchange did not control him or direct him as to the details of the work.

Plaintiff testified that when he went to Excelsior Springs to do this job of splicing, the manager told him he would get anything he wanted; that he would get him new ropes if he needed them; that he would buy new ropes if he did not have old ones that were good enough. Plaintiff's evidence further shows that McCracken, the manager, did get new lumber when told the old platform was defective and that the lumber he had on hand was not suitable for the purpose of making another. It further clearly appears that plaintiff was to decide whether the rope on hand was suitable and good enough. Plaintiff saw the rope, examined it and, though he considered it unsafe, dangerous and liable to break, yet he made no effort to see anyone in order to get new rope after he had seen the rope on hand nor did he then complain to anyone about the rope or request that new be procured.

Foster's statement that he did not know anything about getting new rope was not a change of the arrangement between McCracken and plaintiff that new rope would be purchased if the old was not suitable. When Foster made this statement plaintiff had not

examined the rope on hand to see whether it would do or not. After he saw the rope, he asked the boy for McCracken intending to reject it and have new rope obtained, but did not carry out his intention.

Plaintiff says that at the time he picked out the rope he was not satisfied with it; that he thought it was risky, and said so to his associate, who was working with him; and he says that he didn't consider the rope safe at all. Nevertheless he went on and used it.

The case is not that of a servant using the best appliance he can find and which afterward proves defective. He was not compelled to use old rope. The fact that McCracken was not at the scene of the job does not affect the matter since he was not superintending or controlling it; nor did the fact that neither he nor Foster were at the office of the telephone exchange obviate the duty of plaintiff to notify them the rope was unsuitable. Plaintiff made no effort to learn of their whereabouts or to communicate to them the fact that his examination showed the rope did not come up to his requirements. It was not shown that they could not have been reached. McCracken, at the time in question, was either about the town or at his home; and it was shown that he had a telephone at his house and that both he and Foster were in and out of the office and kept in touch with the telephone plant and could have been reached in a reasonable time.

The appliance needed was a simple affair, merely a rope, which plaintiff could and did examine. And it was not a rope which the plaintiff thought from appearances was sound but which afterwards turned out to be otherwise. The question of hidden defects is not involved since the plaintiff knew the rope was risky and unsafe. Plaintiff was an experienced man, and it was not negligence to delegate to him (the man who knew more about it than anyone else), the duty of selecting his platform and the ropes therefor, especially when his own safety would make him sharper-eyed and

more careful than others would likely be.  [Knorpp v. Wagner, 195 Mo. 637, l. c. 663; Livengood v. Joplin-Galena, etc., Co., 179 Mo. 229, l. c. 240; Forbes v. Dunnavent, 198 Mo. 193, l. c. 209; Hulse v. Telephone Company, 164 Mo. App. 126; Isaacson v. Wisconsin Telephone Co., 119 N. W. 804.]  So that we are unable to see wherein the fall complained of resulted from any negligence on the part of the defendant.  The plaintiff was told new ropes would be obtained if the rope on hand was not suitable; he was sent to examine that matter for himself; it was a simple matter, one directly connected with his work, and, indeed, it was a part of it to see that the platforms on which he worked were in safe condition; he examined the rope, knew it was not safe, but used it without complaint.  In such case negligence on the part of the master is not shown.

On the contrary it was negligence on the part of the servant that appears.  He knew the rope was unsafe no matter how it may have appeared to a man who was not trained in such matters.  He knew an unsafe rope when he saw one, and concerning his knowledge of it when he picked it out, he testified:

"Q.  Were you satisfied with the rope, Mr. Kellerman?  A. No.

"Q.  Why not?  A.  Told the boys it was risky.

"Q.  Told who it was risky?  A.  My helper and Fisher.

"Q.  And you thought it was risky?  A. Yes, sir.

"Q.  Well, you didn't consider it safe when you used it then?  A. No sir.

"Q.  You thought it was liable to break with you?  A. I thought there was danger of it breaking."

In addition to this, he testified that usually a man works on a platform by himself; that it is rather an unusual situation for two men to work on one platform, but that they had done it occasionally on a job of that kind; that neither McCracken nor Foster knew that

two men would be on the platform; that he did not know it himself until after the platform was up in the air; that afterward his associate, working at another point in the cable, volunteered to get on the platform with him and while there it broke. He says he thought the rope was dangerous and likely to break and yet doesn't remember saying anything to his companion about the rope being dangerous, since the latter could see the ropes as well as he could; that he (plaintiff) thought the rope was dangerous and likely to break even with one man on the platform. They were doing the work in their own way and chose to work with two men on a platform having a rope that was dangerous, while, at the same time, there was the other platform which had good ropes on it, hanging a few feet away, and which was not in use at the time and had not been for several hours. Plaintiff testified that the two worked on the same platform, not because the work required them to do so, but to make time. Under these circumstances, we think the plaintiff was guilty of contributory negligence as matter of law. [Hulse v. Home Telephone Co., 164 Mo. App. 126; Myers v. O'Bear, etc. Co., 129 Mo. App. 556; Cristy v. Southwest Missouri R. Co., 131 Mo. App. 266; Glasscock v. Swafford Bros. D. G. Co., 106 Mo. App. 657.]

From every angle from which it may be viewed, we are constrained to hold that plaintiff has no case. The judgment is, therefore, reversed. *Ellison, P. J.,* and *Johnson, J.,* concur.