HOLLORAN, *Appellant*, v. UNION IRON & FOUNDRY COMPANY.

Division Two, March 17, 1896.

1. **Master and Servant:** ASSUMPTION OF RISK: NEGLIGENCE. One fully capable of selecting and contracting for himself, who voluntarily enters into an employment with full notice of its dangers, will be held to have assumed the risks of injury ordinarily incident to such employment.

Holloran v. Iron & Foundry Co.

2. ———: ———: ———: LIABILITY OF MASTER. The rule, that one entering into an employment assumes the risk incident thereto, does not obtain where such risks are known to the master, or, by the exercise of ordinary care, should be known to him, and are not known by the servant, or in cases where the servant incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose that it may be safely used with great care or skill.

| 133 | 470 |
| 172 | 1 66 |
| 173 | 283; |
| 95a | 2117 |
| 95a | 2224 |
| 96a | 2382; |

3. ———: ———: ———: ———. One who has been employed for two years in adjusting iron work in the construction of buildings and was well acquainted with its duties, who was injured by falling from the girders of the first floor into the cellar while assisting in moving a derrick from one part of the building to another, can not recover for the injury, as the appliances used were simple and as well understood by the plaintiff as by his employer, and plaintiff must have been acquainted with his surroundings, and have known better than anyone else whether he could handle himself with safety in his position.

4. ———: ———: ———: ———. Where plaintiff in an action for damages for personal injuries testified that he did not regard the position in which he was working at the time of the accident as a dangerous one, and did not apprehend any risk from placing himself in it, it is apparent that he sought or received no assurance from his employer that the unanticipated risk would be obviated, and that he was not induced to remain in the service by the promise of the master to remedy the situation, so far as the real cause of the injury was concerned.

*Appeal from the St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*L. Frank Ottofy* and *John P. Leahy* for appellant.

(1) To warrant the giving of a demurrer to the evidence it must be clear that a man of common prudence, in a like situation, would not have undertaken the work and that no other conclusion is fairly deducible from the evidence, giving the plaintiff the benefit of every favorable inference that may be reasonably drawn from it. *Schroeder v. Railroad*, 108 Mo. 322–333,

and cases cited; *Millinery Co. v. Railroad*, 59 Mo. App. 668. (2) "Where the servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or, where it is reasonable to suppose or believe that it may be safely used by great caution or skill, the master is liable." *Conroy v. Iron Works*, 62 Mo. 35; *Stoddard v. Railroad*, 65 Mo. 514; *Devlin v. Railroad*, 87 Mo. 545; *Thorpe v. Railroad*, 89 Mo. 650; *Huhn v. Railroad*, 92 Mo. 440; *Soeder v. Railroad*, 100 Mo. 673; *Hamilton v. Mining Co.*, 108 Mo. 364; *Swadley v. Railroad*, 118 Mo. 268; *McMullen v. Railroad*, 60 Mo. App. 27. (3) "It is only where the defect is so glaring that with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, the servant assumes the risk." *Conroy v. Iron Works*, 62 Mo. 35; *Stephens v. Railroad*, 96 Mo. 207; *Schroeder v. Railroad*, 108 Mo. 322; *Monahan v. Co.*, 58 Mo. App. 68. When there is substantial doubt on this question, it is one for the jury and a nonsuit or demurrer to the evidence is not permissible. *Thorpe v. Railroad*, 89 Mo. 650; *Hamilton v. Mining Co.*, 108 Mo. 364; *Schroeder v. Railroad*, 108 Mo. 322. (4) "He is required to take and will be held responsible for the care incident to the situation in which he is placed, and whether he exercised that degree of caution is a fact for the determination of the jury." *Conroy v. Iron Works*, 62 Mo. 35; *Stephens v. Railroad*, 96 Mo. 207; *O'Mellia v. Railroad*, 115 Mo. 205; *Halliburton v. Railroad*, 58 Mo. App. 27. (5) Knowledge of the defect is not sufficient to defeat his recovery, but whether with such knowledge his action was so reckless as to constitute contributory negligence is a question for the jury. *Conroy v. Iron Works*, 6 Mo. App. 102; *Thorpe v. Railroad*, 89 Mo. 650; *Huhn v. Railroad*, 92 Mo. 440.

(6) "And where the master has promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and for any injury suffered in any period which would not preclude all reasonable expectations that the promise might be kept." *Conroy v. Iron Works*, 62 Mo. 35; s. c., 6 Mo. App. 102; *Flynn v. Railroad*, 78 Mo. 195; *Stephens v. Railroad*, 96 Mo. 207. (7) Assumption of risk is matter of defense; in the case at bar contributory negligence alone is pleaded. The former is not in this case. *Alcorn v. Railroad*, 108 Mo. 81; *McMullen v. Railroad*, 60 Mo. App. 231.

*Pollard & Werner* for respondent.

(1) This case should be disposed of by the application of the maxim, *volenti non fit injuria*. *Devitt v. Railroad*, 50 Mo. 302. (2) A promise to repair or provide other appliances will not avail where it appears that the servant does not rely upon it. *Gowen v. Harley*, 56 Fed. Rep. 973–982. (3) The promise or assurance must come from the master, or from some one having authority to speak for him in the matter. *McGowan v. Railroad*, 61 Mo. 528; *Marshall v. Schricker*, 63 Mo. 308.

GANTT, P. J.—This is an action for personal injuries sustained by the plaintiff in falling from the first floor of the DeMenil building in St. Louis into the cellar thereof during its construction.

Plaintiff was a laborer for the Union Iron & Foundry Company which had the contract for the iron work in said building and had been employed for two years by said company in the general work of receiving, moving, and putting up iron work in buildings in

the course of construction.  On the day he received his injuries, plaintiff was engaged, in conjunction with several other laborers, in moving an upright derrick on loose planks laid for that purpose across the uncovered iron girders of the first floor of said DeMenil building. The first story had no floor as yet, the iron columns and cross beams only having been put in place and fastened.   The derrick was provided with small wheels or rollers.

On this occasion a run or track was laid consisting of planks laid side by side and extended end to end across the girders, on which the derrick was to be moved. The derrick was pushed along on these planks by plaintiff, and was pulled and guided by Droney, the foreman of the gang, on the front, or the end in the direction they were moving it.  This work had proceeded safely up to a certain point when it was observed by the foreman, who was engaged with the other men in this work, that the derrick was running to one side, and he thereupon called to plaintiff, who was standing on a plank immediately behind the derrick, prying it from behind by means of a crowbar, to "cut it in." This he attempted to do by stepping to one side, allowing one foot to rest on the plank on which he had been standing, and bracing the other against one of the iron girders running alongside the plank, and inserting his crowbar under the derrick from the side.   Whilst in this position his foot, braced against the girder, slipped, and he fell into the cellar below, receiving the injuries complained of.

Testimony was introduced to the effect that plaintiff and the other men engaged with him had complained sometime before this to the foreman that they were not provided with enough planks for this work. No two agree as to just what was said to, or by, the foreman.   The only witnesses introduced (aside from

the physician) were plaintiff, Lehman, a fellow laborer, and Droney, the foreman of the gang. As to these complaints the testimony of these witnesses is as follows, viz.:

Plaintiff testified: "Before moving the derrick in the morning I told Droney I couldn't do with these four planks; he said, go ahead, he would get more right away; told him I would sooner quit than work on such a job; he said he would get more right away, and to go on."

Lehman testified: "Holloran said to Droney, 'We ought to have more planks there;' heard Droney say, '*We can't get any more, we have to get along with them;*' heard no conversation next morning; I also objected; that is all I heard objected. Droney said: *We have got all he could get and must get along with them. Said nothing about getting more;* sent me out to get in some columns. Came back; told him it was getting dangerous here. I says: 'We ain't got no more planks loose now.' He says: '*Well, I can't help it, we have got to try to get along with it.*'" On cross-examination he says that he "meant that I needed more plank to roll in columns."

Droney, the foreman, testified: "Don't know whether Holloran said anything in particular about there not being sufficient planks; the whole gang of them said we ought to have more; I told them we would try to get some more, but we would try to get along with that, for it was all we had; didn't try to get more that day." On cross-examination he says: "Holloran was present. I said, you take your party and roll in some of those columns; I was working at stake with another man at the end; they came over and said, we haven't got enough of plank; I said, *we will get along to-day;* they, the whole crowd, said they ought to have more plank to run in the columns on.

They were not moving derrick at that time; that was about an hour after. *The planks asked for were for rolling in columns and the eight boards were intended for derrick.*"

As to the relation of the witness Droney to the plaintiff and the other men engaged with him in the work at hand, the testimony introduced shows simply that he acted for the defendant as a foreman in directing these men what to do and when to do it. He engaged in the work with them. It nowhere appears that he had any power to provide materials or appliances of any kind, or any right to employ or discharge men.

Upon the foregoing facts the circuit court sustained a demurrer to the evidence and plaintiff appeals. The question for determination upon this record is whether upon the evidence as it stood the circuit court correctly ruled that the case should be withdrawn from the jury by a peremptory instruction that the plaintiff was not entitled to recover.

The general rule is well settled, and is evidenced by many decisions, not only of this court but of the courts of last resort in England and of the various states of the Union, that if one who is fully capable of selecting and contracting for himself voluntarily enters into an employment with full notice of the risks thereof, he is held to assume the risks of injury ordinarily incident to such employment.

This general rule does not obtain where the risk is known to the master or by the exercise of ordinary care should be known to him and is not known by the servant, and it has been often ruled in this state that this general rule is not applicable if the servant incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or when it is reasonable to suppose that it may be safely used

with great care or skill.   Mere knowledge on his part will not defeat his recovery, if injured under the circumstances last mentioned. *Conroy v. Vulcan Iron Works*, 62 Mo. 35; *Huhn v. Railroad*, 92 Mo. 440; *Hamilton v. Rich Hill Mining Co.*, 108 Mo. 364; *O'Mellia v. Railroad*, 115 Mo. 205.

Is the present case one for the application of the general rule?   Did the plaintiff knowingly assume the risk of falling into the cellar?

According to all the evidence he had been employed in adjusting iron work in the construction of buildings for two years.   He was well acquainted with the duties required of him and the *modus operandi*.   It is not claimed that it was foreign to his employment to require him to assist in rolling the derrick from one portion of the unfinished building to another, nor that it was unusual to move it upon planks laid as on the occasion when he fell.   He was a man of mature years, he was not a minor or a raw and inexperienced man employed in a work which was strange to him.   He knew and fully appreciated the usual risks of his employment, and with this knowledge, and with the risks open and obvious to him and, for that matter, to every one working about the building, at that period in its construction, he undertook to assist in moving the derrick.   He knew the floor had not yet been laid and the only way of moving the derrick or columns was by the temporary use of the loose planks provided for that purpose.   The danger was that he might fall between the uncovered iron girders or rafters.   It was perfectly apparent that a careless step would precipitate him into the cellar below.

As already said, up to a certain point the work had proceeded safely when the derrick appeared to be running too much to one side, whereupon Droney, the foreman of the gang with which plaintiff was at work,

and who was at the other end of the frame pulling the derrick as plaintiff was pushing, called to him to "cut it in," and plaintiff to do this stepped to one side of the derrick, keeping one foot on the planks and bracing his other foot against one of the iron girders which ran alongside of the planks, and inserted his crowbar under the derrick from the side, and just then, he says, "Droney straightened it up, just as I went to cut it." "He pulled it back, when I fell." His foot slipped off of the iron girder, which was four inches by four inches, and he fell into the cellar and was hurt.

The appliances to move the derrick were perfectly simple and were as well understood by plaintiff as the defendant. Plaintiff knew the relative position of the plank and girder upon which he stood and knew better than anybody else whether he could handle himself safely in his position. The girders and planks were entirely sound, the only danger was he might slip and fall and he voluntarily incurred that risk. The manner of handling himself was under his own control.

In the course of the erection of a new building it is almost impossible to keep it in an absolutely safe condition at every moment of the work. The skeleton has to be erected before the covering, the iron work before the brick and frame. Certain risks are ordinarily incident to the state of things found in the unfinished condition of every building in course of construction. But the mechanics and laborers employed and paid to build it are presumed to understand their duties and the risks usually attendant upon them, and knowing beforehand the methods in use they assume the risks usually incident to the discharge of their duties. The master has never been held for such injuries to his servants. If he were, he would be the insurer or guarantor of his servant's or employee's safety. No one would dare to undertake a work requiring the employ-

ment of mechanics and laborers to assist him if such a rule should prevail.

Plaintiff's fall was not caused by any breaking of the planks, or by any defect in the derrick or crowbar. His sole complaint is that there were not enough planks, and yet his own witnesses testify he was told that the work must be done with those.

When the relation of the mechanics and laborers to this building they were constructing, at that stage, is considered, it can, we think, be safely assumed, as it was by the circuit court, that plaintiff was not employed in a dangerous place.   While it might be dangerous for children, or persons wholly unaccustomed to such work, it in no sense fell within the line of places denominated "extra hazardous."   To denominate this as a dangerous place and hold the master liable for such an accident is to place upon him a burden which the law up to this time has not imposed. It was the defendant's duty to furnish its servants with tools, appliances, and instrumentalities reasonably safe for the purpose for which they were used, but it was not required to use the most modern or improved tools or appliances, and it is perfectly apparent that plaintiff's fall was not occasioned by the insufficiency in the number of planks or any defect in the crowbar, or the derrick, but was the result simply of a miscalculation on his part as to his position and his accidental slip from the girder, and the defendant is not liable for the consequences.

This brings us to the contention of plaintiff's counsel that this case falls within the exception to the general rule, that, notwithstanding the defect or risk is brought to the knowledge of the employee yet if he reports it to his employer and the master promises to repair the defect or remove the danger, the servant can recover for an injury caused thereby, within such a

period as it would be reasonable to allow the master for its performance, and for any injury suffered in any period which would not preclude all reasonable expectations that the promise might be kept. This qualification of the general rule is now firmly engrafted in the law of this state. *Conroy v. Vulcan Iron Works*, 62 Mo. 35; *Keegan v. Kavanaugh*, 62 Mo. 230; *Flynn v. Railroad*, 78 Mo. 195; *Stephens v. Railroad*, 96 Mo. 207. And is likewise the accepted rule in England. *Holmes v. Clarke*, 6 Hurl. & N. 349; *Clarke v. Holmes*, 7 Hurl. & N. 937.

Waiving all discussion of the authority of Droney to bind defendant by a promise of additional planks, as testified by plaintiff alone and denied by his own witnesses, does plaintiff bring himself within the exception and qualification of the rule last mentioned? We think most clearly not, because plaintiff himself testified and reiterated it over and over that he did not think he was in a dangerous position when he put one of his feet on the girder and the other on the plank. Whatever need there might have been for more planks to expedite the work of rolling in the columns, or whatever danger he anticipated from a want of planks in some other way, his own evidence confronts him, in which he three times asseverates that he didn't think himself in any danger at the time his foot slipped. As he apprehended no risk from placing himself in this attitude it is self-evident he had not sought or received any assurance that this unanticipated risk should be obviated, and as he had no promise covering this risk it necessarily follows that he was not induced to remain in the service and expose himself to danger by the promise of Droney or anyone else to remedy it, so far as the real cause of his injury is concerned.

The learned counsel for appellant in their brief suggest various theories upon which a recovery might

be predicated, but it is sufficient to say they are not alleged in the petition and hence are not here for consideration.

The trial court was justified in reaching the conclusion that there was no substantial evidence of negligence on the part of defendant, and it followed, as a matter of law, that no recovery could be had, and he therefore properly sustained the demurrer to the evidence, and his judgment is affirmed. BURGESS, J., concurs. SHERWOOD, J., also concurs but may hereafter express some additional views in a separate opinion.