## CARRIE BRADLEY, Appellant, v. JAMES H. FORBES TEA AND COFFEE COMPANY.

### Division One, July 3, 1908.

1. **APPEAL: Judgment for Right Party: Demurrer.** Where plaintiff's case in a negligence suit did not make out a prima-facie case for her, and the judgment was for defendant, and defendant's demurrer to the evidence, which was overruled, should have been given, the judgment will be affirmed, and other assignments of errors committed by the court in the progress of the trial will not be considered.

2. **NEGLIGENCE: Assumption of Risks.** If the place which the master, an ordinary industrial corporation, furnishes his servant in which to work is reasonably safe for that purpose, then the master has performed his full duty towards the servant, and he is not liable for injuries to the servant caused by dangers created by the servant in the performance of his duties.

3. ————: ————: **Dangerous Place.** Where the duties of the servant and his assistant were more or less dangerous, but depending solely upon the manner and care with which they were performed, and not upon any danger connected with or incident to the place in which they were performed, and the servant's knowledge of the dangerous situation was better than that of the master, the master is not liable in damages for injuries sustained by the servant.

4. ————: ————: **Falling Piles of Coffee Sacks.** Coffee sacks, weighing from 200 to 250 pounds, were stored on the first floor of defendant's building, and piled up in parallel rows ten or twelve feet in height and extending about twelve feet from the wall, and among other duties plaintiff's husband, who was an experienced man at the work, was to perform, was to select from the stock certain grades and kinds of coffee, and carry them to an upper floor and there mix them and make certain blends for the trade. Often when one pile was removed the one next to it would settle more or less and bulge out in the center, and if the bulge was so great as to likely result in the pile falling, he or some other employee would right it, but if the bulge was slight no attention was paid to it. For a few days prior to the accident he was in attendance upon the court as a juror, and on the day prior to his return the foreman and another employee partially removed one of the middle rows of sacks, which caused the next row to bulge or lean somewhat,

but not sufficient to cause them to conclude that it would fall, and when plaintiff's husband returned to his work he went to the row which had been partially removed, without having been informed as to the leaning condition of the adjoining row, and began to remove other sacks therefrom, when, without warning, the leaning row fell upon him and broke his back. *Held*, that the danger was created and arose, not because defendant furnished him an unsafe place in which to work, but solely out of the fact that plaintiff's husband and the other servants removed the sacks from the row next to the one which fell; and there being no charge or evidence that the defendant was negligent in the selection of his co-employees, his widow cannot recover damages for his death. He assumed the risks, and the master is not liable.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*James M. Rollins* for appellant.

(1) The master's position to his servant is that of a superior. The servant's relation to his master is that of subordination. The master owes a duty of inspection to his servants. The servant owes no duty of inspection of his master's premises. Shortel v. St. Joseph, 104 Mo. 120; Gutridge v. Railroad, 105 Mo. 526; Scott v. Springfield, 81 Mo. App. 312; Hughes v. Fagin, 46 Mo. App. 44; Thompson v. Railroad, 86 Mo. App. 148; Devore v. Railroad, 86 Mo. App. 429. (2) Defendant's claim that its demurrer should have been sustained has no merit, and the case was one for the jury to consider under proper instructions. The evidence shows that a man by the name of Fitzgerald was defendant's foreman, and as such had charge of the employees on the different floors of defendant's establishment. The evidence conclusively shows that Bradley was engaged as a coffee mixer on the third and fourth floors and that he obtained the coffee by going

213 Sup—21

to the stock room and selecting the desired brands from the piles of sacks of coffee therein. The piles were made under the direction of the said foreman, whose duty it was to see that the piles were kept in a safe condition. Where the place in which the servant is set to work is like the place in question, not necessarily or inherently dangerous, but of such a nature that it may be maintained in a reasonably safe condition by the master, by the exercise of ordinary care, the master, if he fails to exercise such care, in consequence of which a careful servant is injured, is liable in all cases except one. The excepted case may be stated thus: When the master intrusts to a competent servant the arrangement, inspection and repair of a place wherein work is performed, such servant cannot recover for an injury he receives in consequence of a situation he creates or defects he fails to discover or repair. The facts in the case at bar do not call for the application of this exemption. FIRST. The evidence affirmatively shows that deceased was not intrusted by his employer with properly arranging or storing the sacks of coffee in the stock room, so as not to endanger the safety of persons working about the same. It is true that his employment as a coffee mixer occasioned frequent visits to the stock room where he obtained the coffee and that on occasions he assisted in carrying in and storing the sacks of coffee in tiers or piles, at the direction of the foreman, but he had nothing to say about how the sacks of coffee should be arranged or stored, whether they should be arranged in piles or tiers, high or low, or otherwise. When he thus assisted he did so in obedience to the foreman, who for the master directed the work, which, therefore, when completed, represented in plan and arrangement the will of the master. SECOND. There was no evidence tending to show that the master intrusted to Bradley the duty of inspecting and repairing the piles of sacks

of coffee. On the contrary, the evidence affirmatively shows that this duty was intrusted to the foreman. If, however, there had been such evidence, it was a question for the jury. Nicholds v. Plate Glass Co., 126 Mo. 65. The fact that Bradley may have been told or accustomed to look out for leaning piles did not increase his obligation nor lessen that of the master. Covey v. Railroad, 27 Mo. App. 179. (3) Nor can Bradley's death be attributed to the negligence of a fellow-servant, since the duty of the master to exercise care to furnish a safe place is a positive or absolute duty, which the master owes to the servant, and those to whom he intrusts it are vice-principals, regardless of whether they are of high or low degree in the employment. They represent the master if intrusted with any of the master's duties to the servant. Zellars v. Mo. W. & L. Co., 92 Mo. App. 123.

*Seddon & Holland* for respondent.

Regardless of the question of alleged errors, the judgment of the lower court should be affirmed because it is for the right party. The lower court should have given a peremptory instruction to find for defendant. Livengood v. Joplin, 179 Mo. 229; Knopp v. Wagner, 195 Mo. 637; Henson v. Armour, 113 Mo. App. 618; Kelly v. Railroad, 105 Mo. App. 365; Gleeson v. Excelsior Mfg. Co., 94 Mo. 201; Schaub v. Railroad, 106 Mo. 74; Mathias v. K. C. Stock Yards, 84 S. W. 60.

WOODSON, J.—Plaintiff instituted this suit in the circuit court of the city of St. Louis to recover the sum of $5,000 damages for the killing of her husband, John M. Bradley, through the alleged negligence of the defendant. There was a trial before the court and a jury, which resulted in a verdict and judgment for the defendant, from which the plaintiff duly appealed. The facts are few, and are substantially as follows:

At the time of his injury and death John M. Bradley and plaintiff were husband and wife. Defendant was a business corporation, engaged in the wholesale tea and coffee business in the city of St. Louis. On and prior to November 20, 1903, said John M. Bradley was in the employ of defendant as a "laborer or foreman," and among other duties he was to perform was the selecting from the stock certain grades and kinds of coffee, and carry them to the third or fourth floor of the building and there mix them so as to make different blends for the trade. The coffee in stock was stored on the first floor and was piled up in rows three feet wide, that being the length of the coffee sacks, and extended from the west wall toward the east a distance of some ten or twelve feet and were about twelve feet in height. The different rows were about the same length and height and were parallel with each other. The sacks of coffee weighed from two hundred to two hundred and fifty pounds each.

Bradley was an experienced coffee man, and was perfectly familiar with the manner in which the coffee was piled. For three years he had assisted in building and tearing down those piles. Frequently when one pile was removed the one next to it would settle more or less and bulge out in the center. If the bulge was so great as to endanger the pile falling, Bradley and some other employees of the company would adjust the matter, but if the bulge was only slight no attention was paid to it. A few days prior to the accident the deceased was summoned to serve on the jury in the circuit court, and while he was in attendance upon the court other employees of the company performed his duties. The day prior to his return the foreman in charge of the business and another employee of the company partially removed one of the center rows of coffee, which caused one of the adjoining rows to bulge or lean somewhat, but not sufficient

to cause them to apprehend that there was any danger of its falling. It remained in that condition until the next morning, November 20, 1903, when Bradley returned to work. Shortly after he resumed his duties he went to the row of coffee which had been partially removed, without having been informed of the leaning condition of the adjoining row, and began removing additional sacks of coffee therefrom, when, without warning, the leaning row of coffee fell upon him and broke his back, which resulted in his death on the next day.

I. At the close of plaintiff's case, the defendant asked an instruction in the nature of a demurrer to the evidence, which was by the court refused, and to which action of the court in refusing to give said instruction defendant duly excepted. The defendant declined to introduce any evidence, and the court submitted the issues to the jury under certain instructions given, and, as elsewhere stated, the jury found for the defendant, and plaintiff duly appealed.

The contention of learned counsel for plaintiff convicts the trial court of having committed many errors during the progress of the trial, and asks this court to review the rulings of the trial court.

In response to that request we are confronted with the assertion of counsel for defendant that the judgment is for the right party regardless of the errors assigned; and contend that the evidence as disclosed by the record does not make out a case for the plaintiff, and that the court erred in not sustaining its demurrer to the evidence, and renews that contention in this court.

We will first consider defendant's demurrer to the evidence, and if we find that the evidence was not sufficient to make out a prima-facie case for plaintiff, and that the demurrer should have been sustained, then the necessity of making an examination and passing

upon the numerous questions presented by plaintiff will be obviated.

It is the contention of the defendant that Bradley came to his death as the result of a risk which was assumed by him and which arose in the course of his employment. In other words, it is contended that he was killed, not because the master furnished him an unsafe place in which to labor, as contended for by the appellant, but that the danger in this case was created and arose solely out of the fact that the servants of defendant were removing the sacks of coffee from one pile, which had a tendency to make the adjacent piles lean and bulge out of a perpendicular line. Some of the sacks had been removed by employees Burgin and Burchard the day before the accident, and on the morning of the accident deceased was removing additional sacks from the pile himself, and it was not until he had removed several of them that the adjacent pile fell upon and crushed him.

The law seems to be well settled in this State and elsewhere in this class of cases that if the place which the master furnishes to the servant in which to labor is reasonably safe for that purpose, then the master has performed his full duty toward the servant, and he is not liable for injuries to the servant caused by dangers created by the servant in the performance of his duties. The reason for that rule is that the master can foresee and remedy the dangers which are connected with the place in which the servant is to labor, but not so in reference to dangers which are created or caused by the servant and which arise out of the performance of his duties. In most if not in all cases of that character such dangers depend upon the care and skill of the servant himself.

For instance, the most hazardous of employments may be performed with a minimum degree of danger by a most skillful and careful operator; while, upon the

other hand, an employment however free from danger may be rendered exceedingly hazardous by the negligence or unskillfulness of the servant. In neither case can the master foresee how the servant will discharge each particular duty. And in neither case is the master liable for the injuries so inflicted by a servant upon himself.

In Livengood v. Lead & Zinc Co., 179 Mo. 229, the plaintiff was injured while assisting a drill-man in drilling holes in a mine drift by the explosion of a charge of powder in a hole which had on the day previous to plaintiff's employment been placed in the drift by the drill-man. It was the custom of the drill-man and his helper to examine every shot and ascertain whether or not they had exploded, and, if it was discovered that any shot had not exploded, it was their custom to work somewhere else. The plaintiff at the time was acting as helper to the drill-man. The court in this connection says: "The duties of a drill-man and his helper are necessarily more or less dangerous, but they are simple, and require no great amount of skill or training. Any man of ordinary intelligence can perform them. They consist of drilling holes in the rock, putting sticks of dynamite in them, setting off the shots, removing the dirt after the explosion, and then going through the same operation again. It is not a scientific matter to ascertain whether any of the charges in any of the holes remain unexploded after the shots have been fired. Even the slightest examination will disclose that fact to even the most unscientific investigator. There is no reason in law why the ascertainment of this simple fact cannot be as well and as safely performed by the servant as the drilling of the hole and the charging of it with dynamite can be performed by the servant. In fact, the latter requires more care and skill than the former. And there is no claim in this case that the master was negligent

in the selection of the drill-man, nor that Wilkie was an unsuitable or improper person to be employed in such work. That he was negligent in this case is apparent, but he also paid the penalty himself by losing his eyesight. . . Here it was the duty of the drill-man and of the plaintiff to examine and see whether any charge remained unexploded. They failed to do so, but proceeded with the work and the injury ensued. The drill-man was negligent and the plaintiff was negligent. The injury was caused by a risk incident to and ordinarily connected with the doing of the work the plaintiff engaged upon. The negligent manner in which the plaintiff and his fellow-servant, Wilkie, did the work, caused the injury. The work of the master was dangerous, but it was not illegal. The master had a right to conduct it in his own way so long as that way was not illegal and so long as it was not negligently done on his part. The servant assumed the risk of doing the work in that way when he entered the master's employment. He also assumed the risk of being injured if his fellow-servants were negligent, and they, in turn, assumed the risk of being injured if he was negligent. For such injuries there can be no recovery.''

The Livengood case was followed in the case of Knorpp v. Wagner, 195 Mo. 637. There the court said: ''Another thing, it is fundamental that a master can not delegate his primal duties as master by a general order or rule and thus avoid responsibility. If the courts would tolerate such ready-at-hand scheme of easy avoidance, then the employer of men might well add a new and worldly significance to the lines of the good old hymn:

> This is the way I long have sought;
> And mourned because I found it not;

for a cure-all for not a few of his ills lies in a stroke of his pen. With this general proposition conceded, it is asserted by respondent that appellants could not delegate the duty of inspecting drill holes so far as to relieve them from liability for negligent inspection. But is it sensible, or will it do to say that an expert servant may not have delegated to him intermediate duties of detail pertaining to his own labor, as, for example, the duty of inspecting his own drill holes and of taking care to ascertain danger and avoid causing accidental explosions? This precise question was before this court in Livengood v. Lead & Zinc Co., 179 Mo. 229, and Fisher v. Cent. Lead Co., 156 Mo. 479, and ruled against respondent's insistence after full consideration. Indeed, of all persons in the world, the drill-man, because of the law of self-preservation and because of his peculiar and personal knowledge of the hole, would be the most keenly alive to hidden peril and be the most likely to smell it out, i. e., would make the best inspector of his own drill holes. Respondent's complaint of the method of inspection, therefore, is not well founded. His inspection of the old drill was the inspection of his master and he must not be heard to complain of the method, i. e., the spoon method, for it was in use to his knowledge; nor of the character of the inspection, for it was his own act; and he may not complain that the master did not otherwise inspect the hole, because he knew and voluntarily adopted the plan of inspection by the drill-man; and what is more, he knew that no one had inspected the hole but himself. Again, the servant assumes the ordinary risks incident to his employment—in this case, the manifold dangers of mining with explosives. All that is required of the master is to exercise ordinary care. Now, as to one phase, at least, of the question of assumption of risks, the case is free from doubt, thus: Respondent, an expert miner, with wide-open eyes, who hav-

ing eaten the fruit of the tree of knowledge of good and evil (in mining) voluntarily accepted and continued in the service of appellants in a mine having no air shaft, where none was practicable, and where, for obvious reasons, the rule was to fire no squib shots during working hours. That by his conduct he must be held, as a matter of law, to have assumed the known risks incident to that employment in that way ought to require no argument.''

In Henson v. Armour Packing Co., 113 Mo. App. 618, a carpenter was sent to reinforce the shoring of a bank of earth and while engaged in the work the bank caved in and injured him. There the court held that the master was not liable merely because the place was unsafe or merely because the plaintiff's foreman sent him into a dangerous place, and this because the very work he was sent to do was to render a dangerous place reasonably safe. The court says in this connection: ''When the work in hand is dangerous for the reason that it is to secure and make safe an unsafe place, the rule, as generally applied, that the master must furnish the servant a safe place in which to work, can have no application. To say that a man can have a safe place to work in an unsafe place is an absurdity.''

In the case of Kelley v. Railroad, 105 Mo. App. 365, the plaintiff was injured by a defective appliance. The duty, however, was imposed upon him of looking out for defects in such appliance and reporting same. There the court says: ''When it is the servant's office to keep tools in repair, and he carelessly fails to do so, the rule that the master must use care to furnish the servant reasonably safe tools has no bearing on the case, for the reason that the servant's own dereliction prevented the discharge of the master's duty.''

If we view the case at bar in the light of what has been held in the foregoing cases, and apply the legal

principles there enunciated, then there is but little foundation left upon which appellant can stand. The duties of Bradley and his assistant were more or less dangerous, depending solely upon the manner and care in which they were performed, and not upon any danger connected with or incident to the place in which they were working. A person of ordinary intelligence could have performed those duties. They consisted of piling up sacks of coffee and tearing them down in selecting the different grades to be used in making the desired blends. It requires no special degree of knowledge to do either with perfect safety to the employee. Appellant was experienced in the business and knew one of the effects of removing sacks from a row to frequently cause those of the adjoining rows to settle and lean or bulge out more or less, which could be readily adjusted by shifting the sacks back again to a perpendicular position and thereby remove all danger of falling. While that may have taken a little time and labor, yet that was a part of his duties and which he had often performed before this unfortunate accident occurred, and for which he was being paid.

He was hourly in contact with the situation, caused and observed the condition of the sacks, while the master had no occasion or opportunity to inspect them. If the rows bulged, it was caused by the act of the servant, and it was his duty to inspect and straighten them without waiting for orders from the master; and there is no legal reason suggested why that simple duty might not have been as well and as safely performed by the servant as by his master. In fact, the former's knowledge of the situation was better than that of the latter, and for that reason it would have been a useless and idle ceremony for the servant to have reported that fact to the master and awaited orders from the latter to remedy the defect. And it should be borne in mind that there is no claim advanced

that the master was guilty of negligence in the selection of appellant's co-employees, or that they were unsuitable or improper persons to perform the duties assigned to them. Bradley or his assistant, or both, were guilty of negligence in going into and removing sacks of coffee from the place where the sacks had been removed the previous day, which was next to the leaning row. Under all of the authorities the master is not liable in damages for injuries sustained by either of them in consequence of such negligence.

It was the duty of Bradley and his assistant to keep a constant lookout to see whether or not the piles of coffee would bulge or lean when sacks were removed from the adjoining piles, and, if so, to straighten them up, and thereby prevent them from falling and thereby injuring themselves. In this instance they failed to do so, but proceeded with their work, and the injury resulted. Both were negligent, and the injury was caused by a risk incident to and ordinarily connected with the performance of the duties they were engaged in. While the work was somewhat dangerous, yet it was not illegal for the master to engage the appellant to perform it. It is not contended that the master did not have the right to conduct his business in the manner shown by the evidence; but concede such has been made, still he would have had the right to conduct it in his own way so long as that way was not unlawful or was not a negligent mode of conducting it; and in this case there is no evidence tending to show the mode in which the business was conducted was either negligent or unlawful. Bradley assumed the risk that was incident to the mode in which it was being conducted, and he also assumed the risk of being injured by the negligence of his fellow-servant.

Suppose, for instance, instead of being employed in a house in building up and tearing down rows of coffee, as in the case at bar, Bradley had been employed

in a wood and coal yard to rick up and tear down and saw cord wood in lengths to suit the trade, and while doing so he removed one rick in such a manner as to cause an adjoining one to lean and fall upon and injure him, would it be seriously contended that the master would be liable to him in damages for the injuries sustained by him in consequence of the wood falling upon him when it was shown that it was his duty to rick the wood and tear it down, and to do it in such manner as to prevent the ricks from leaning and falling, and that if perchance a rick should lean to straighten it up and thereby prevent it from falling? We think not, yet the same legal principle underlying and governing the one underlies and governs the other.

Counsel for appellant places some stress upon the fact that her husband had not been working for respondent for a few days prior to his injury, and that he did not remove or assist in removing the sacks which caused the pile of coffee to lean and fall. That is true, but it is also true the pile was still standing when he began work, and he knew that when the sacks were so removed it was liable to cause the adjoining piles to lean, and with that knowledge, when he saw the sacks had been removed, ordinary care and prudence on his part would have caused him to have looked and observed the leaning condition of the pile in question, which was as obvious to him as to the master; and had be done so, he would have seen the leaning condition thereof, and could have conducted himself accordingly. But having gone into the dangerous place without having done so, he was guilty of negligence which caused his injuries and death, and which will preclude his widow from a recovery in this case.

This precise question was made and presented to this court in the case of Livengood, supra, and it was there held, as here, that plaintiff could not recover.

We are, therefore, clearly of the opinion that the

evidence did not make a case entitling the plaintiff to recover, and for that reason the demurrer to the evidence should have been sustained, and that the action of the court in refusing it was error.

This view of the case renders it unnecessary for us to pass upon the several questions so ably discussed in brief and in oral argument by learned counsel for appellant.

The judgment is affirmed.

All concur.