## MICHAEL GUNNING, Respondent, v. J. R. KELLEY COOPERAGE COMPANY and JOHN R. KELLEY; JOHN R. KELLEY, Appellant.

**Kansas City Court of Appeals, March 2, 1914.**

1. **NEGLIGENCE: Personal Injuries: Piling of Boards.** The plaintiff sued to recover for personal injuries sustained while in the employ of defendant. Plaintiff was engaged in removing slabs from one of several piles of lumber, which were very high and close together, although not depending on one another. While he was on the top of a pile throwing down the slabs, the adjoining pile started to fall on him, and he was compelled to jump seven or eight feet to the floor, whereby he was injured. *Held*, that the demurrer to the evidence was properly overruled.

2. ———: ———: **Assumption of Risk: Usage or Custom.** Where timbers, stocks, bags, boxes, crates, etc., are piled in a method approved by general usage or custom, the risks of injury to the servant engaged in the work of piling or unpiling the same are incidental to the service and therefore assumed by him as a part of his contract of employment.

3. ———: ———: ———. Where men in building piles of lumber followed the method of construction prescribed by the defendant they are not guilty of negligence, and where a faulty method is shown to have been the cause of the injury the plaintiff is entitled to recover.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

*Boyle & Howell, Glen L. Bruner,* and *Joseph S. Brooks* for appellant.

*Brewster, Kelly, Brewster & Buchholz, E. H. Busiek* and *Paul R. Stinson* for respondent.

JOHNSON, J.—Plaintiff, a common laborer employed in a cooperage factory, operated by defendant in Kansas City, Kansas, was injured while at work and sued to recover his resultant damages on the ground that they were caused by negligence of defend-

ant. The petition alleges that the common law prevailed in Kansas at the time of the injury. The defenses of present concern are a general denial and pleas of assumed risk, contributory negligence and that the injury was caused by negligence of fellow servants of plaintiff. A trial to a jury ended in a verdict and judgment for plaintiff and the cause is here on the appeal of the individual defendant (against whom alone judgment was rendered) whose principal contention is that his demurrer to the evidence should have been sustained.

It appears from the evidence of plaintiff that the business of defendant is conducted on a large scale and that in its prosecution quantities of raw material are stored and seasoned in a large room which has a reinforced concrete floor and a ceiling twenty feet high. A vast quantity of oak boards or slabs for barrel heads had been piled in this room by servants of defendant according to a method prescribed by him and customarily followed in his factory. Each slab was twenty-two to twenty-four inches long, three to sixteen inches wide, three-fourths to seven-eighths of an inch thick and weighed three or four pounds. Partly for the purpose of utilizing all available space, the piles were extended to the ceiling and were set close to one another at their bases, but each was a separate and independent structure which could be torn down as slabs were needed without affecting the integrity or stability of the adjoining pile. The base of each pile consisted of two parallel and adjoining rows or ricks of slabs twenty or twenty-five feet long and seven or eight feet high. The width of each rick was twenty-two or twenty-four inches, the length of the slabs. On top of this base and parallel to its course, a third or binder rick was built to the ceiling. It was as long as the basic ricks, ten or eleven feet high and twenty-two or twenty-four inches wide. In the construction of a rick, square end piers composed of slabs first

were built and then the intervening space was filled with slabs placed in layers so that those of one layer were crosswise of those in the nether layer. Each pile, therefore, consisted of a base of loosely piled slabs, twenty or twenty-five feet long, seven or eight feet high and four feet wide and of a top rick, con- structed of and resting upon such slabs, twenty or twenty-five feet long; ten or eleven feet high and two feet wide. The weight of this rick was designed to bind and hold together its supporting ricks. This de- scription of the piles is that given in the evidence of plaintiff and differs in important respects from the de- scriptions of defendant's witnesses which are found not to be in accord. All agree, however, that each pile was independent of the others but some of defend- ant's witnesses, while admitting that a pile consisted of three ricks, two of which composed the bottom tier and the third the top or binder tier, say that the height of the entire structure did not exceed thirteen or four- teen feet and that of the top tier, six feet. Others say that a pile consisted of six ricks, three in the bottom course, two in the middle, and one on top, the latter being not over four or five feet high.

The evidence of plaintiff being substantial and rea- sonable must be accepted as true in our consideration of the demurrer to the evidence and we assume that each pile was of the construction and dimensions de- scribed by him. According to his evidence the piles had been built a year or more before the date of the injury of rough, green slabs of some unevenness as to thickness. It appears that the great height and nar- rowness of a pile, together with the unevenness of the slabs, their lack of unity and their immense collective weight produced a condition of instability and that top tiers occasionally toppled over without any apparent immediate cause. This evidence is denied by defend- ant whose witnesses state that the piles were con- structed in the usual method followed in such factories

and that top tiers were never known to fall without the application of direct human force. We do not understand any witness to claim that usage or custom would approve the construction of piles of the dimensions of those described by plaintiff and the assertion that the piles in question were built in the usual manner is founded on defendant's evidence that the tiers, especially the top one, were materially less in height than plaintiff's witnesses state they were. In substance, all of the witnesses agree that a pile eighteen or twenty feet high, having but two tiers of ricks, would be an unusual construction.

Plaintiff, who, as stated, was a common laborer, inexperienced in any work requiring technical knowledge or skill, was ordered to assist in removing slabs from one of the piles for conveyance to a kiln. The top or binder rick of that pile had already been removed by other workmen and plaintiff had gone to the top of the bottom ricks and was throwing off slabs to the floor, when the top rick of the adjoining pile started to fall over towards him without apparent cause and he was compelled to jump to the floor to save his life. He was about fifty years old, weighed 200 pounds, and the jump from a height of seven or eight feet resulted in the infliction of physical injuries of a severe and permanent character.

Witnesses for defendant testify that the fall of the rick was caused by plaintiff pulling out some of its supporting slabs, but this is contradicted by plaintiff whose evidence tends to show that the great weight imposed on such slabs by the superstructure would hold them too firmly in place for removal in such manner.

Defendant's vice principal admitted that "everybody cannot pile it. It takes a man who has been broken into it," but denied that the work of unpiling calls for special knowledge or skill. The method of unpiling a top rick was for the workman to stand on

the floor and push slabs off with a long pole provided for that purpose.

That defendant was not an insurer of the safety of plaintiff, his servant; that within the limits of reasonable care he had a right to conduct his business in his own way; that it was within his rights as master, to build piles extending to the roof, if he chose, and that plaintiff assumed all of the natural risks of the service he was employed to render, are propositions which must be conceded, since all of them are founded on elementary rules of the law of master and servant. Further the cases in this State recognize the rule that where timbers, sticks, bags, boxes, crates, etc., are piled in a method approved by general usage or custom, the risks of injury to the servant engaged in the work of piling or unpiling are incidental to the service and, therefore, assumed by him as a part of his contract of employment. [Bradley v. Tea Co., 213 Mo. 320; Dickinson v. Jenkins, 144 Mo. App. 132; Courter v. Mercantile Co., 136 Mo. App. 517; Fleeman v. Bag Co., 159 Mo. App. 593; Gibson v. Bridge Co., 112 Mo. App. l. c. 599.]

As was well said by BROADDUS, P. J., in the Courter case: "It is elementary law in cases of negligence arising between employee and employer, that plaintiff must, as a condition precedent to his right to recover, show that defendant failed in the performance of some duty owing him as employer . . . we have not yet reached that stage in our jurisprudence where the entire care for the safety of the servant devolves on the master." And in Dickinson v. Jenkins, supra, we held that "where sticks of wood are piled as men have piled them through all ages, the servant required to unpile them cannot be heard to complain of the master for not having made a different pile."

The embarrassment defendant is under in attempting to apply these well-known rules to the instant case is that in so doing he must ignore entirely

the evidence of plaintiff, which we have found to be substantial and of probative force and which is to the effect that the piles in question were neither ordinary wood piles, such as men have made since the advent of Promethean fire, nor were they constructed in a manner sanctioned by general usage. Obviously it required technical knowledge and skill to erect lofty piles composed of such small, disconnected units in a way that would not subject servants compelled to work on and about them to unnecessary risks of injury.

Defendant's duty was to adopt and pursue a method of work that would not enhance the dangers to his servants beyond those which still would exist were the piles erected in a manner approved by reasonable care. His right to conduct his business in his own way did not include the right to be negligent or to ignore the welfare of his servant. Certainly it did not give him the right to run up such a tall, narrow, ill-founded and top-heavy agglomeration of loose boards which were likely to topple over with or without apparent cause and without warning and kill or maim the servant. The jury were entitled to believe that plaintiff's description of the piles was accurate and on such hypothesis the only conclusion open to a reasonable mind would be that the rick which fell and caused the injury was negligently constructed and that such negligence was the proximate cause of the injury.

We find no place in this case for the application of the rule that a servant cannot recover against his master for an injury caused by a risk resulting from changes in the place necessarily resulting from the work of the servant. Plaintiff was not injured by the pile he was working upon and his work in no manner affected the stability of the adjoining pile which fell.

Nor is there any ground on which he may be held guilty in law of contributory negligence. That argument also must exclude from its hypothesis the evi-

dence of plaintiff. Of course if he pulled the pile over towards himself by withdrawing its supports, he did a foolhardy thing which would preclude him from recovering, but he denies touching that pile at all, and it was for the jury to determine whether or not he was telling the truth.

Finally it is argued that defendant is not liable for the reason that fellow servants of plaintiff piled the slabs. The men who built the piles followed the method of construction prescribed by defendant and were guilty of no negligence. The faulty method, not the manner of its performance, is shown to have been the cause of the injury.

The demurrer to the evidence was properly overruled.

In what has been said we have sufficiently answered certain objections urged to rulings on evidence. We regard the criticism of plaintiff's instructions as too technical. The case was fairly tried.

Affirmed. All concur.