## GEORGE T. HUMPHREY, Appellant, v. JAMES W. LUSK et al., Receivers, Respondents.

Springfield Court of Appeals, June 23, 1917.

1. **MASTER AND SERVANT:** Duty of Servant to Take Precautions. A master has a right to exact of the servant the intelligent use of his senses in performing his work and that he will take proper precautions for his own safety.

2. ———: Duty of Master as to Tools: Cannot be Delegated: Master Excused When. The master owes to the servant the duty to furnish and keep reasonably safe the tools and appliances used by the servant. And while ordinarily such duty cannot be delegated to others, yet the master may require reasonable inspection by the servant and cannot be held liable for a servant's injury which is due to the servant's own failure to inspect the tools used.

3. ———: Defective Tools: Knowledge on Part of Servant: When Recovery Regardless. Mere knowledge on the part of the servant of defects in tools and dangers in their use will not defeat recovery unless the peril is so obvious and glaring that an ordinarily prudent man would not use the tool and this is especially true where the master has promised to repair the tool.

4. ———: Use of Defective Tool by Servant: Master's Promise to Repair. Where a servant seeks to excuse himself for using a tool known to be defective because of the master's promise to repair it, he must further show that the master's promise and assurance to repair were the inducing causes for continued use.

5. **MASTER AND SERVANT:** Use of Defective Tool by Servant: Authority of Person Making Promise to Repair. Where a servant seeks to excuse his use of a tool known to be defective on the ground of the master's promise to repair same it must be further shown that the person making the promise has the real authority to represent the master in that respect or is held out by the master as having such authority.

6. ———: Servant's Injury: Master Not Liable: When: Evidence. Action by servant against master for personal injuries occasioned by defective shears used by plaintiff in cutting iron for the master. There was evidence that the dull condition of the shears was made known to two other employees who promised to sharpen them. Evidence examined, conditions and scope of authority of the other two servants considered. *Held,* that the knowledge of the defective condition of the shears was not brought home to the master so as to permit him to have same sharpened as knowledge of the fellow workmen was not knowledge of the master: *held* further that the promise of future repairs was not made by one having authority to represent the master.

Appeal from Jasper County Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Fielding P. Sizer* for appellant.

*W. F. Evans, Mann, Todd & Mann, McReynolds & Halliburton* and *Gray & Gray* for respondent.

STURGIS, J.—In this action plaintiff seeks to recover for personal injuries received while in defendant's employ as operator of a machine called "shears" used in cutting iron at defendant's repair shops at Springfield, Missouri. These shears were operated by electricity and the two large blades, or knives, opened and closed at regular intervals in the manner of ordinary shears. They were powerful enough to cut bars or sheets of iron of considerable thickness. The piece of iron to be cut was placed by the operator on the lower blade, which was stationary, and the other descended with sufficient force and power to cut it off. In so doing on this occasion a piece of iron held by plaintiff slipped between the knives and, flying back, caught his finger against a guard mashing the same. The negligence is stated in the petition as follows: "Plaintiff placed the front end of said iron upon the lower blade of said shears, while the upper blade was going up, and before same should descend to cut said iron, and when the upper blade came down in its regular movement it came in contact with the iron so placed as aforesaid, and on account of the defective and dull and blunt condition of said shears, the front end of said iron was suddenly thrown out of the grasp or bite of said shears as they closed upon same, thereby throwing plaintiff's right hand against the guard to said shears with such force and violence that plaintiff's middle finger upon his right hand was mashed and crushed. Plaintiff further states that he had requested those in charge of the sharpening and furnishing of shears

for said machinery to sharpen same or furnish plaintiff with blades that were not defective, blunt and dull; and that said foreman in charge of said work employed by the defendants as aforesaid, promised plaintiff that he would furnish same; and relying upon the promises of the defendants, their agents, servants and employees plaintiff continued to work with said machinery, thinking that he could do so by exercising ordinary care on his part; and while doing so, and before said shears were furnished as aforesaid, plaintiff was injured as above set forth, which injuries were directly caused by the negligence of the defendants, their agents, servants and employees, in failing to exercise ordinary care to furnish plaintiff with blades that were reasonably sharp; that the blades which were on said shears were defective, blunt, dull and insecure, and were so beveled that they could not take or catch upon the metal inserted between the blades as aforesaid. That the defendants further were negligent in failing to furnish plaintiff with sharp blades as aforesaid, and were further negligent in promising plaintiff that they would supply such blades and failing to supply same after having promised to do so; that as the direct result of such negligence, acting separately or conjointly, plaintiff was injured as aforesaid." The answer is a general denial and a plea of contributary negligence. The trial resulted in an instruction at the close of plaintiff's evidence directing a verdict for defendants, to avoid which plaintiff took a nonsuit. The court refused to set this aside on plaintiff's motion and he appeals.

The parties do not differ so much as to the law of this case as to the facts and what inference the jury might properly draw from the evidence in plaintiff's favor. If plaintiff made a case for the jury it is solely by his own evidence. He testified that the shears in question had been sharpened some two weeks previous to this accident but by use had become dull and blunt; that this caused same to be dangerous because of the liability of the pieces of iron to slip and fly out under

the strong pressure of the knives, and that this actually happened on this occasion, causing his injury.

Plaintiff thereupon invokes the doctrine that it is the duty of the master to furnish his servant reasonably safe tools and appliances with which to· work and to keep same in such reasonably safe condition at all times. Plaintiff's evidence showed a violation of this duty resulting in his injury. But does that alone make a case for him? Evidently he thought not, and correctly so, in view of the fact that he was the one who operated this machine and that these knives became dull under and by his use and that he would be and was the one who would first see and observe this condition and know and realize the danger of the longer use of same without sharpening. He testified that there was no way to tell how long a pair of these shears would stay sharp, depending on the extent to which he used them and how well they had been previously sharpened. Plaintiff also knew that as operator of this machine it was his duty, on observing the dull and therefore dangerous condition of these knives, to take some steps to have or cause same to be sharpened, and that a failure to do so and his continued use of same without doing anything to remedy or cause to be remedied this known defect would be negligence on his part. He also knew that the master could not be held for negligence in not repairing this defect unless such master had actual or constructive knowledge of the existence of such defect for a sufficient length of time to remedy same. How was the master to know this unless he took some action?

These additional elements entering into plaintiff's cause of action result from the fact that the master has a right to exact of the servant the intelligent use of his senses in performing his work and that he take proper precautions for his own safety. [Forbes v. Dunnevant, 198 Mo. 193, 209, 95 S. W. 934; Bowen v. Railroad, 95 Mo. 268, 8 S. W. 230.]

While the general rule is that the duty to furnish and keep reasonably safe the tools and appliances used by the servant cannot be delegated by the master

to others so as to escape liability, this doctrine is limited by the further rule that the master may properly entrust to the servant the reasonable inspection and seeing to the repair of the tools and appliances used by him; and where plaintiff's injury results in whole or in part from his own negligence in this respect, the master is not liable. Under the facts of this case the duty devolved on plaintiff to observe when the shears became dull and dangerous and to take proper steps to have same sharpened or replaced with sharp shears. [Kelley v. Railroad, 105 Mo. App. 365, 79 S. W. 973; Forbes v. Dunnevant, 198 Mo. 193, 210, 95 S. W. 934; Bradley v. Tea & Coffee Co., 213 Mo. 320, 330, 111 S. W. 919; Rowden v. Mining Co., 136 Mo. App. 376, 117 S. W. 965; Knorpp v. Wagner, 195 Mo. 637, 663, 93 S. W. 961.]

We have said that the plaintiff knew that the proof of the performance of these duties resting on him was essential to his case, and so he alleged, as part of his cause of action, that, on seeing that these knives were dull and dangerous, he notified those in authority, and whose duty it would be to have the defect remedied, of the condition thereof; and, to excuse his continued use of the machine in its defective condition, he further alleged that the foreman in charge of the work and representing the master directed him to continue using these shears and that the defect would be remedied; that plaintiff did so, relying on such promise and assurance and believing that he could use same with safety by using due care. Plaintiff undertook to prove these facts, which are clearly essential to his recovery, and did prove some of them, at least. He testified that he observed and knew that these knives were dull and that the danger of using same was so great that he would have quit his job except for this promise and assurance. The plaintiff, however, further testified that the blades were not so dull or the danger of using them so glaring but that he thought he could safely continue to use same with due care. In this respect the plaintiff brought himself within the rule which he invokes,

and defendants concede, that mere knowledge of defects in, and dangers in the use of, tools and appliances will not defeat recovery unless the peril is so obvious and glaring as to deter an ordinarily prudent man from using same, and this is especially true when the servant has the express or implied promise of repair and assurance of the master that he can do so till the defect is repaired. [Wainright v. Lumber Co., 156 Mo. App. 512, 519, 137 S. W. 53; Morgan v. Mining Co., 160 Mo. App. 99, 120, 141 S. W. 735; Thompson v. Railroad, 86 Mo. App. 141, 148; Delo v. Mining Co., 160 Mo. App. 38, 43, 141 S. W. 687.] Where the plaintiff seeks to excuse himself for using a known defective and dangerous machine because of the master's promise to repair it, he must further show that this promise and assurance was the inducing cause for the continued use. [Coin v. Lounge Co., 222 Mo. 488, 514, 121 S. W. 1; Holloran v. Foundry Co., 133 Mo. 470, 479, 35 S. W. 260; Ryan v. Box Co., 156 Mo. App. 693, 137 S. W. 1008; Pulley v. Standard Oil Co., 136 Mo. App. 172, 175, 116 S. W. 430.]

Where reliance on a promise of future repairs is, as it is here, a controlling factor, the rule assumes and is bottomed on the fact that plaintiff must prove that the person who makes the promise of repair or assurance of safety has authority in that respect and represents the master in so doing, or is one whom the master holds out as having such authority by custom or usage. This was assumed in the Holloran case, supra, at page 480, and is so held in McGowan v. Railroad, 61 Mo. 528, 531; Shackleton v. Railroad (Mich.), 64 N. W. 728; Webber v. Piper (N. Y.), 17 N. E. 216; Cicalese v. Railroad (N. J.), 69 Atl. 166; Hampton v. Traction Co. (Neb.) 154 N. W. 716; American Tobacco Co. v. Adams (Ky.), 125 S. W. 1067, 1070. In 4 Labatt's Master & Servant, section 1342, page 3854, the rule is stated thus: "An analysis of the decisions involving the effect of a promise shows that the servant is deemed to have no cause of action unless he proves the following facts. . . . That the prom-

ise was given either by the master himself or by some agent authorized to make it in his behalf." [See, also, idem section 1344, page 3859; 28 Cyc. 1208.]

The person whom plaintiff says he notified of these shears being dull and who told him to go ahead and use them and promised him to have same sharpened, is named Larkin. This man, plaintiff says, was a machinist and worked in the "thread house" whatever that may mean. When knives were to be sharpened he was the man who first worked on them and dressed them up and got them ready to be hardened. Then the knives were taken to the blacksmith, Meynard, who hardened them. There is no testimony as to either of these parties being a foreman or having any such authority. All that plaintiff testified to as to the apparent authority of this man was that plaintiff had worked as operator of this machine for some six months and for a month or two previous as helper to the then operator; that from the start whenever he wanted sharp blades he went to this man Larkin; that there were several pairs of blades there but never more than one sharp pair; that when the blades got dull plaintiff would go to Larkin and he would sharpen them and then the blacksmith would harden them. It appears that when one pair got dull they did not stop and wait for it to be sharpened, but another pair was sharpened and put on in place of the dull ones. Plaintiff would change the blades; would take the old ones off and put others on after they were sharpened. After a pair were sharpened and hardened sometimes the blacksmith brought them to plaintiff to change and sometimes the plaintiff went after them. Plaintiff took them to Larkin and Larkin took them to Meynard, the blacksmith, or Meynard went to Larkin for them. When plaintiff got them back, he always got them from Meynard. "When the blades got dull so that I thought they needed sharpening, I took them to either Meynard or Larkin to have them sharpened."

On the occasion of this accident plaintiff says he noticed that the shears were dull and told Larkin of

that fact; that Larkin said that they ought not to be dull so soon, but when he looked at them he said: "Those blades are duller than if they had been cut with six months, and they haven't been on two weeks. Go ahead and use them and I will fix you up another pair and you can put them on." The next day plaintiff was injured. Plaintiff further testified that one Walter Constant had charge of that shop; that no one ever directed him to do otherwise than to go to Larkin and Meynard to get shears sharpened.

Under these facts we fail, as did the trial judge, to find any evidence that Larkin occupied the position of foreman as alleged or that he represented the master in that capacity. He and Meynard, so far as shown, were mere fellow workment with plaintiff in the same shop. Each of those men performed a certain part of the work of sharpening the shears when so requested by plaintiff, and doubtless such was their duty. Larkin did the first part of the work of sharpening and Meynard did the last part. For this reason only did plaintiff go to Larkin first and Meynard last. The master properly imposed on plaintiff, and this the plaintiff fully recognized, the duty of observing the condition of these shears and when dull to take same to these other workmen to be sharpened. It was then the duty of these other men to sharpen them. Any failure on their part to do this work promptly would be known to plaintiff and would be a proper matter to report, if necessary, to the person in authority. The duty to these other workmen to sharpen the tools used by plaintiff on plaintiff's request, did not make either of them a vice-principal or confer authority on either to assure plaintiff of safety in using defective tools or to excuse plaintiff from so doing by promising to make repairs at a later time. For aught that appears the delay of these fellow workmen in making the requested repairs was a mere matter of convenience on their part. Plaintiff's case must, therefore, fail because: (1) no knowledge of the dull condition of these shears was

brought home to the master so as to permit him to have same sharpened, for a knowledge of such defect by plaintiff's fellow workmen was not the knowledge of the master; and (2) the promise of future repairs was not made by one having authority to represent the master.

The ruling of the trial court, therefore, was correct and the judgment will be affirmed. *Cox, P. J.,* and *Farrington, J.,* concur.